**In re Belinda BARTON, Debtor.**

**No. 98–03294–W13.**

United States Bankruptcy Court,
E.D. Washington.

June 15, 2000.

Probe loan was executed after the VISA agreement, the clause is ineffective to secure the VISA charges with the Probe.

John W. Campbell, Attorney at Law, Spokane, WA, for Belinda Barton.

Richard J. Hayden, Attorney at Law, Spokane, WA, for Ford Motor Credit Company.

## MEMORANDUM DECISION RE: OBJECTION TO FORD MOTOR CREDIT COMPANY'S CLAIM

PATRICIA C. WILLIAMS, Chief Judge.

THIS MATTER came on for hearing before the Honorable Patricia C. Williams on March 14, 2000 upon the Debtor's Objection to creditor Ford Motor Credit Company's claim. The debtor was represented by John Campbell; creditor Ford Motor Credit Company was represented by Richard Hayden; and the Chapter 13 Trustee was represented by Joseph Harkrader. The court reviewed the files and records herein, heard argument of counsel and was fully advised in the premises. The court now enters its Memorandum Decision.

### I.

### FACTS

On May 27, 1998, Ms. Barton, the debtor, filed a Chapter 13 petition and a proposed plan. That original plan, and all amended plans, were served on the master mailing list which included Ford Motor Credit Company (hereinafter "Ford"). The original proposed plan listed Ford as a holder of a claim in the amount of $16,036 secured by a 1997 Dodge Neon and listed $16,500 as the value of collateral. The claim was to be paid at the rate of $442 per month.

On July 1, 1998, Ford filed a Proof of Claim in the amount of $23,004.28 and designated the entire claim as secured. Attached were copies of the security documents on the 1997 Dodge Neon.

The debtor then filed a First Amended Plan on July 23, 1998 which again identified Ford as the holder of a claim in the amount of $16,036 secured by the vehicle with a value of $16,500. The monthly payment to Ford under the plan was to be $367. An objection to confirmation was filed by the Trustee on various grounds, including the "excessive" interest rate contained in the Ford Proof of Claim.

The debtor on October 27, 1998 then filed a Second Amended Plan again identifying Ford as having a claim of $16,036 with the value of the vehicle at $15,000 to be paid at $367 per month. The Trustee objected to this plan as well, but Ford never filed an objection to any of the proposed plans.

The confirmation hearing occurred on December 13, 1998 and the Trustee and debtor's counsel appeared. At that hearing, the Trustee indicated that the Ford Proof of Claim appeared to be in a greater amount than should be allowed as it included pre-computed interest and other items. The Trustee indicated that the actual amount of the secured claim should be "clarified" but that if the plan were to pay Ford $442.39 per month which was the regular contract payment, the plan would be feasible as the claim would be paid consistent with the filed Proof of Claim. The Second Amended Plan was then confirmed and the confirmation order specifically stated: "... Creditor Ford Motor Credit Company's allowed secured claim shall be paid at the rate of $442.39 per month."

Debtor's counsel shortly thereafter left the practice of law and on January 5, 1999 her current counsel filed his Notice of Appearance. On May 27, 1999, debtor's new counsel filed and served an Objection to Claim of Ford which specifically proposed to pay Ford a secured claim of $8,500 as that was the value of the vehicle at the time of the petition. Ford objected on the basis that its allowed secured claim had been determined by confirmation of the plan.

## II.

### ISSUES

Essentially, Ford argues that any objection the debtor may have made to the amount of Ford's secured claim based on 11 U.S.C. § 506(a) which limits the secured claim to the value of the collateral had to be determined at the time of confirmation. Ford further argues that its filed Proof of Claim controls, i.e. that it has a secured claim of $23,004.28 and due process requires more specific notice of any deviation from that claim than the plan confirmation process. In the alternative, Ford argues that since the debtor in her plan identified the collateral as having a value of $15,000, *res judicata* and estoppel prevent her from five months later alleging that the value was $8,500.

Debtor quite naturally disagrees with the creditor's perception of the situation. The debtor argues that the language of the court-required form Chapter 13 plan, which was utilized in this case, clearly precludes the plan from being *res judicata* as to the amount of a secured claim. The form plan states that the amount of an allowed secured claim is the amount contained in the Proof of Claim unless there is a separate motion filed to value the collateral or an objection to the claim. This provision for a separate motion, according to debtor, precludes *res judicata*. Debtor also argues that the requirements of due process and applicable court rules have been met as the debtor filed an objection to claim specifically raising the issue of the value of the collateral.

## III.

### DISCUSSION

A. *For Res Judicata Purposes, Is This Specific Chapter 13 Plan a Final Determination of the Amount of an Allowed Secured Claim When the Filed Proof of Claim Contains a Different Amount?*

Generally, a confirmed plan is *res judicata* as to all issues that could have

been raised or litigated at the confirmation hearing. *In re Pardee,* 193 F.3d 1083 (9th Cir.1999).

 The principle of *res judicata* however must be applied consistent with relevant specific Bankruptcy Code and Rule provisions. Several specific Code sections and Bankruptcy Rules must be analyzed in addressing the issues raised by the parties. A court should interpret a statute so as to minimize discord among related provisions, and statutory provisions shall be interrupted in such a manner as to be consistent with one another. *In re Hobdy,* 130 B.R. 318 (9th Cir. BAP 1991); *Perlman v. Catapult Entertainment (In re Catapult Entertainment),* 165 F.3d 747 (9th Cir.1999). The same is true of court rules. Bankruptcy rules, even though merely procedural, have the force of law unless they directly violate a specific statutory provision. *Gardenhire v. IRS (In re Gardenhire),* 209 F.3d 1145 (9th Cir.2000).

 Section 502(a) states that a proof of claim is deemed allowed unless a party in interest objects. However § 506(a) limits the amount of a secured claim to the value of the collateral. Applying those statutory provisions to these facts, when Ford filed its proof claim in the amount of $23,004.38 and designated the total amount as secured, presumptively, Ford's allowed secured claim was $23,004.38. The debtor had the right under § 506(a) to object to that proof of claim on the basis that the value of the collateral was less than $23,-004.38. The debtor could not modify that filed claim by proposing and confirming a plan which paid a different amount.

F.R.B.P. 3007 requires an objection to a claim to be in writing and filed and served on the claimant 30 days before any hearing on the objection. The notice and hearing procedures for any such objection is statutorily mandated by § 502(b). An objection to a claim is a contested matter under F.R.B.P. 9014. *Garner v. Shier (In re Garner),* 246 B.R. 617 (9th Cir. BAP 2000). Both F.R.B.P. 9014 and 3007 require a

separate pleading be served and filed with reasonable notice and opportunity for hearing. *Garner, supra.*

The language in the form Chapter 13 plan required to be used in this District is consistent with these statutes and rules which require an objection to claim to be a separate pleading and be resolved by notice and hearing.

To creditors whose secured claims will be paid within the term of the plan, each creditor shall retain its security interest/lien and be paid the amount of its secured claim plus interest from the date of petition filing as calculated by the trustee at the interest rate and monthly payment set forth below. The amount of a creditor's secured claim shall be the amount stated as secured on a proof of claim filed by or on behalf of the creditor unless the court determines a different amount following the filing of a separate motion to value the claim or the filing of an objection to the claim . . . .

Eastern District of Washington, Local Form, Chapter 13 Plan, paragraph IIIA3(a).

Ford has the right to rely upon its proof of claim and if the debtor disagreed with that claim for any reason, the debtor had to file an objection to it. If the basis for the objection was that the value of the collateral was less than the obligation, thus reducing the secured claim under § 506(a), the debtor was required to so indicate and provide Ford with notice and hearing so that the issue of value could be determined by the court. Objections to claims must be raised in accordance with these statutes and rules which mandate pleadings separate and apart from any proposed plan. The Chapter 13 plan confirmation process simply does not meet all procedural and substantive safeguards collectively required by §§ 502(b), 506(a), F.R.B.P. 3007 and F.R.B.P. 9014 which apply to objections of claims. Any provision in a Chapter 13 plan which purports to modify a properly filed claim is not effective. It is

not the correct procedure to do so. An objection to claim is a contested matter and places the appropriate parties on notice that litigation is required to resolve the dispute. The filing of a Chapter 13 plan does not initiate a contested matter and as F.R.B.P. 3015 requires in most instances that plans be filed with the petition, it is unlikely that creditors at that point have even contemplated filing proofs of claims. When the claim is filed pre-confirmation, the Code and the Rules impose on the debtor the burden of placing the claim in dispute by means of an objection to claim. *In re Simmons,* 765 F.2d 547 (5th Cir.1985).

The *Pardee* decision, *supra,* does not indicate whether the student loan creditor had filed a proof of claim and does not address the relationship between *res judicata* principles and § 502(a). More importantly, the *Pardee* court reached its conclusion based upon the specific language of the plan under consideration. In the situation before this court, the specific language of the plan provides that the secured amount shall be "... the amount stated as secured on a proof of claim...." Simply placing $16,500 or some other number in the "Value of Collateral" column under paragraph IIIA3(a) of the plan does not abrogate the express language of the plan itself.

This Chapter 13 plan expressly states that the amount of a creditor's secured claim shall be the amount designated in the proof of claim absent objection to the claim. It necessarily follows that confirmation of this plan can have no *res judicata* effect on the issue of the amount due on a secured claim. This conclusion is consistent with the analysis of the concurring opinion in *Hobdy, supra.* As that concurring opinion states, the plan determines the payment stream which will be disbursed by a trustee to a claimant but is not binding as to the amount of the claim. *Hobdy* was also relied upon in *In re Moore,* 181 B.R. 522 (Bankr.D.Idaho 1995) which held that the value of the collateral

set forth in the confirmed plan did not control. The confirmed plan had no *res judicata* effect as to the amount of the allowed secured claim.

### B. *Was This Objection to Claim Untimely?*

■ The next question presented in this case is whether the debtor timely filed her objection to the Ford claim. Unfortunately, there is no statute or court rule which contains a deadline for filing objections to claims. Again, several statutes and rules must be analyzed to determine whether, when read as a whole, there is a requirement that objections be filed before certain other acts can occur.

Ford argues that § 506(a) establishes a deadline for determining objections to claims based upon the value of collateral. Section 506(a) provides that when determining the amount of an allowed secured claim based upon the value of collateral that the value is to be determined "... in conjunction with any hearing ... on a plan affecting such creditor's interest." Since a Chapter 13 plan affects a creditor's interest by establishing the payment stream to be received by that creditor from the Chapter 13 Trustee, Ford argues that the value of its collateral must be determined at the time of the confirmation hearing.

Interpreting § 506(a) as a deadline creates difficulties in the plan confirmation process and is inconsistent with other deadlines established in the Code. Congress could not have intended to impose a deadline for a hearing on the objection to claim earlier than the deadline to file the claim itself. F.R.B.P. 3002 allows 90 days after the first date set for the § 341 meeting of creditors for the filing of a proof of claim. In many districts, confirmation hearings are routinely held prior to the claims bar date and this periodically occurs in this District. This problem is exacerbated by the fact that F.R.B.P. 3007 requires 30 days notice of the hearing after the objection is filed. Chapter 13 plans are to be filed within 15 days after com-

mencement of the case. F.R.B.P. 3015. Chapter 13 plans are confirmed expeditiously and delaying confirmation hearings until claims are due under F.R.B.P. 3002 plus the additional 30 days required by F.R.B.P. 3007 would be contrary to that goal. Reading § 506(a) to impose a deadline for the filing of objections prior to the claims bar date would be a nonsensical result. If Congress had intended objections to claims to be filed prior to Chapter 13 plan confirmation, it would have been a simple matter to write such a deadline into the statute. More importantly, the language of § 506(a), when read consistent with other provisions of the Bankruptcy Code, does not mandate the interpretation suggested by Ford.

A more careful reading of the language of § 506(a) does not lead to a conclusion that objections to claims based on the value of collateral must be determined at confirmation. As stated above, confirmation of a plan is not a determination of the amount of any allowed secured claim. Form plans in this District expressly provide that the amount of the secured claim, absent separate court determination, is the amount stated as secured in the proof of claim. The "creditor's interest" determined by the plan confirmation is the stream of payments to be received under the plan. As a plan cannot establish the value of the collateral, if the proposed payment stream is sufficient to satisfy the claim as filed, confirmation can occur whether or not an objection to the claim has been filed. The creditor's interest as it relates to the value of the collateral is not the issue during confirmation of a Chapter 13 plan.

A filed secured claim will be deemed allowed under § 502(a) if no objection has been filed. Based upon that filed claim, the proposed stream of payments in a particular plan under consideration may be less than the allowed amount of such claim. This would prevent confirmation of the plan under § 1325(a)(5)(B). In such situation, the debtor would either have to propose a new plan increasing the stream of payments or object to the claim. If that objection were based upon the value of the collateral, practicality as well as § 506(a) would require the value to be determined at the time of the plan confirmation so that the court could determine compliance with § 1325(a)(5)(B). However, so long as the payment stream under a proposed plan is sufficient to meet the requirements of § 1325(a)(5)(B) based on the claims . as filed, confirmation may occur.

No provision of the Code, including § 506(a), imposes a deadline for the filing of objections to claims. The question then becomes whether under the facts of this case, laches, estoppel or some other equitable doctrine precludes the debtor from now objecting to Ford's Proof of Claim.

■ Ford argues that the doctrine of laches or equitable estoppel precludes this debtor from objecting to the claim 5 months after confirmation. Ford also argues that as the debtor listed the value of the collateral at $16,500 in her first proposed plan and then in the confirmed plan at $15,000, the debtor should now be equitably estopped from alleging a lower value. Ford has the burden of proof on this affirmative defense and must present clear and convincing evidence. *Central Ariz. Water Conservation Dist. v. United States*, 32 F.Supp.2d 1117 (D.Ariz.1998).

■ In order to prevail, Ford must demonstrate that the debtor intended Ford to take some action (alternatively, to fail to take some action which it otherwise could have taken) based upon the valuation contained in the plan. Also, Ford must have relied upon the valuation reference in the plan to its injury. *Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.*, 249 F.2d 277 (9th Cir.1957) and *Central Ariz. Water Conservation Dist. v. United States, supra*. Ford has presented no evidence that either of these conditions occurred. Ford had filed a Proof of Claim alleging a secured claim of $23,004.28 which was prima facie evidence of the claim's validity and amount. It created a rebuttable presump-

tion that Ford has an allowed secured claim of that amount. *In re Garner, supra.* The claim was deemed allowed under § 502(a). Under these principles of bankruptcy law, it is difficult to perceive how Ford could have relied upon the value referenced in the plan as determining its right to an allowed secured claim.

Ford argues that the doctrine of laches precludes the debtor from delaying for 5 months after confirmation to object to the filed claim.

> Laches is an equitable doctrine. Its application depends upon the facts of the particular case. (Cases cited). To establish laches the defendant must show both an unexcused or unreasonable delay by the plaintiff and prejudice to himself.

*Brown v. Continental Can Co.,* 765 F.2d 810 (9th Cir.1985).

■ This doctrine is applicable in bankruptcy proceedings. *In re Petty,* 93 B.R. 208 (9th Cir. BAP 1988).

■ When Ford filed its Proof of Claim on July 1, 1998 alleging that it was fully secured in the amount of $23,004.28, the debtor had all the facts available to determine if an objection to claim should be filed based on § 506(a). The debtor had possession of the collateral and had an opinion of its value as of the date of the filing of the petition which in fact she expressed in her original plan when she listed the value as $16,500. The propriety of the claim, although not based on § 506(a), was raised by the Trustee in his objection to confirmation of the original plan. When the debtor filed her Second Amended Plan, she listed the value of the vehicle at $15,000, again evidencing that she knew she had a basis to dispute the filed claim. The pleadings themselves demonstrate that the debtor knew she had a dispute with Ford concerning the value of the vehicle, yet the debtor did not object to the claim.

Although the value of the collateral is to be established as of the date of the filing of

the petition, automobiles by their very nature deteriorate rather quickly and can suffer a significant change in condition very rapidly and unexpectedly. Mileage continues to increase. The more time that passes between the commencement of the case and any objection to claim based on the value of a vehicle, the more difficult is it for a creditor to establish to its own satisfaction, let alone prove to the court, the condition and value of the vehicle as of the date of filing.

■ Automobile lien creditors will in most cases be prejudiced when many months pass between the commencement of the Chapter 13 and the filing of an objection to claim under § 506(a). Assuming without deciding that is true in this case, this does not automatically result in the doctrine of laches being applied. The doctrine not only requires prejudice to the creditor but requires "inexcusable" or "unreasonable" delay on the part of the debtor in the filing of an objection to claim.

The delay in this case was caused in great part by the change of counsel for the debtor. Through no fault of the debtor or her counsel, the debtor was required after plan confirmation to obtain new counsel. That new counsel had to familiarize himself with the case. Absent that circumstance and assuming prejudice to Ford as outlined above, laches would prevent the debtor now raising an objection to Ford's claim. However, the court finds that the 5 months of delay between the plan confirmation and the filing of the objection to claim is excused due to the circumstances surrounding the required change of counsel.

## IV.

### CONCLUSION

Confirmation of the plan did not operate as *res judicata* as to the amount of Ford's allowed secured claim. The doctrine of laches does not render the delay in filing the objection to Ford's Proof of Claim

untimely, assuming Ford was prejudiced by the delay, as the delay is excusable due to the circumstances surrounding the change of counsel.

The Clerk of the Court is directed to file this Memorandum Decision and provide copies to counsel.