**In re Michael John MAHAN and Anita Mahan, Debtors.**

**Bankruptcy No. 282–00764–C–7.**

United States Bankruptcy Court, E.D. California.

Aug. 17, 1989.

James Warren Beall, Carlsbad, Cal., for debtors.

Daniel J. McCampbell, Chico, Cal., for trustee.

MEMORANDUM DECISION RE DEBT-ORS' OBJECTIONS TO CLAIMS

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

The debtors have filed objections to all of the claims that were filed in this chapter 7 case. I hold that the debtors are estopped from objecting to claims because their untruthful and inaccurate schedules caused a valuable asset to lie undiscovered for nearly seven years.

FINDINGS OF FACT

This bankruptcy case was filed in 1982. A trustee was appointed and continues to serve. The claims to which debtors now object were timely filed in 1982. A discharge was granted June 8, 1982. The trustee did not locate assets for distribution to creditors and filed a Report Of No Distribution on March 21, 1984. The case was closed on April 11, 1984. It was reopened in 1989 in order to permit the administration of a previously-undisclosed asset.

At the time of filing the bankruptcy case, debtors owned a 50 percent stock interest in F.H.S., Inc. That ownership interest was not listed by debtors as an asset on their schedules and statement of affairs that they executed under penalty of perjury. They specifically said in their schedules that they had no interest in any corporations or partnerships.

The debtors' stock interest in F.H.S., Inc., was discovered in 1988 by a prospective purchaser of the corporation. The case was reopened on January 23, 1989. A motion for private sale of asset for the price of $10,000 was filed by the prospective purchaser who wanted to obtain clear title. On April 24, 1989, the court ruled that the stock was property of the estate that could be sold by the trustee but, in view of the assertion by debtors that the

proposed price was too low, ordered an auction in open court upon appropriate notice.

Debtors amended their schedules on April 24, 1989, listed the F.H.S., Inc., stock, identified it as having been held in 1981 by a creditor as security for a claim, and recited in Amended Schedule A-2 that the market value of the stock was $100,000 in 1982 and $1,250,000 in 1989.

The stock sold for $50,000 at auction in open court on notice to interested potential bidders on June 8, 1989. Debtors participated in the bidding.

On June 8, 1989, debtors filed objections to every proof of claim that had been filed in this case, all of which had been filed in 1982. Debtors asserted that the claims were objectionable on such various grounds as unconscionability, failure of consideration, failure to renew a judgment, and statute of limitations.

### DISCUSSION

The facts of this case implicate equitable principles. The question is whether the debtors' conduct concerning the asset not disclosed on their schedules filed in 1982 should estop them seven years later from making blanket objections to all the claims that were filed by creditors. I conclude that they should be estopped.

No limitations period for objecting to claims is specified in either the Bankruptcy Code or the Bankruptcy Rules.[1] 11 U.S.C. § 502(a); Bankr.Rule 3007. An objection to a claim may be made at any time, but may be limited by the doctrine of laches. See, e.g., In re Werth, 29 B.R. 220 (Bankr. D.Colo.1983). Moreover, estoppels may be imposed. Lewis Indus. v. Barham Constr. Co., 878 F.2d 1230 (9th Cir.1989).

#### 1. Inequitable Conduct.

Debtors were the architects of the mischief in this case. They failed to list the shares in the corporation on their schedules, which they averred were complete statements of their assets and liabilities, and, even more to the point, they specifically averred in those schedules that they had no interest in any corporation. Those averments were not true.

Now that the stock has been unearthed and sold by the trustee, debtors object to all of the claims that were filed in their bankruptcy case. If their objections were to be sustained, this strategy would result in the $50,000 (net of administrative expenses) that was realized from the sale being distributed to the debtors, leaving their creditors with nothing.[2] Such a result would be the paradigmatic case of profiting from one's own misconduct. Debtors' objections collapse of their own inequity. For that reason alone, they should be estopped.

#### 2. Breach of Duties Under 11 U.S.C. § 521.

Debtors' breaches of various duties under section 521 independently justify estoppel. They did not file accurate schedules and statements regarding their assets and financial affairs. 11 U.S.C. § 521(1). They did not cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties. 11 U.S.C. § 521(3). And they did not surrender to the trustee all property of the estate. 11 U.S.C. § 521(4). These duties are obligations that must be taken seriously and complied with conscientiously by debtors who desire the full benefits of bankruptcy relief.

1. I assume, without deciding, that the debtors are "parties in interest" who have statutory standing to object despite the presence of a trustee serving in the case. 11 U.S.C. § 502(a). That conclusion, however, is not free from doubt. See 3 L. King, Collier on Bankruptcy ¶ 502.01[2] at pp. 502-12—13 ("better view is that the debtor himself is not a party in interest"); cf. In re Sun Ok Kim, 89 B.R. 116 (D.Hawaii 1987); In re Savidge, 57 B.R. 389 (D.Del. 1986). I intimate no view on the issue.

2. The possibility that there could be a bona fide objection to the entire amount of every claim, including claims that are based upon final state court judgments, is so improbable as to raise the specter of bad faith. The nature of the specific objections, e.g. statute of limitations and failure to renew recordation of judgments, further suggests a lack of good faith. This affords an adequate, independent basis for estopping the debtors.

It is no defense that debtors may assert that they were relying upon the advice of counsel when they signed untruthful and inaccurate schedules. It is settled that the consequences of bad legal advice are visited upon clients. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387 (9th Cir.1988).

### 3. *Bankruptcy Policy.*

Finally, policy reasons favor creating strong incentives for debtors to be forthcoming about *all* of their assets. The Bankruptcy Code reflects a delicate balancing of the competing, generally antithetical, interests of debtors and creditors in chapter 7 cases. In exchange for delivering up all their nonexempt property for distribution to creditors, individual debtors receive a discharge from their debts and an opportunity for a fresh start, taking their exempt property with them. Creditors are left with the nonexempt property, if any.

A debtor's voluntary compliance with the obligation to list and turn over all property of the estate is essential, lest the system becomes unfairly skewed in a fashion that the Congress strove to avoid. Debtors usually have the upper hand in information, knowing the identity and location of the assets, including interests in property. If debtors are not completely candid about their assets and do not cooperate with trustees, the system could rapidly degenerate into one in which debtors get both what they are entitled to—the discharge, the fresh start, the exempt property—and some of the nonexempt property which is to be liquidated and paid to creditors, i.e. property to which they are not entitled.[3] Dictates of fairness require that such encroachments are to be discouraged.

In order to promote voluntary compliance with the obligation to be forthcoming about property, there need to be incentives that favor disclosure in close cases. Consider the instance of intangibles or soft assets of genuinely uncertain value. It is all too easy to convince oneself, particularly with the assistance of creative counsel, that the value of the intangible or soft asset is so doubtful as to excuse the requirement of identifying the property and to do so with confidence that, if the property later were to be discovered, under the facts there would be little risk of either criminal liability or losing the discharge. Similarly, where there are arguments that the property might not be property of the estate, there can be a tendency to sit tight rather than disclose and cooperate. The imposition of the type of estoppel that is being imposed in this case, i.e. precluding debtors from attacking the claims of their creditors, affords one incentive to disclose and cooperate.

There is little risk in this case that truly unwarranted claims will be allowed to slip through without objection. The trustee still has the duty, if a purpose would be served, to examine proofs of claims and to object to allowance of any claim that is improper.[4] 11 U.S.C. § 704(5). Presumably, now that there is money that will be available for distribution, a purpose would be served by examining the claims. The

---

**3.** To be sure, compliance with the obligations to disclose and cooperate can be compelled. There are criminal sanctions for hiding property with the requisite intent, discharge can be denied or revoked, and creditors and trustees are permitted very broad discovery. The sanctions, in principle, operate as disincentives for uncooperative debtors and, in fact, probably do dissuade much egregious conduct. The broad discovery rights similarly serve their purpose in cases in which trustees and/or creditors determine that the potential yield is worth the expense. Nevertheless, the reality (particularly in close cases) is debtor control, especially over property that is easy to keep out of sight.

**4.** Indeed, there is a decided preference to have the trustee do the objecting on behalf of the estate. *In re Dominelli*, 820 F.2d 313, 317 (9th Cir.1987). An objection by the trustee may be held to preempt objections by others whose interests are not in conflict with the trustee's interests. *Id.* Thus, "[w]hile the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee." Bankr.Rule 3007 advisory committee's note (1983).

trustee should be expected to do his duty.[5]

In sum, debtors who wish to have the full benefits of bankruptcy relief must carry out, fully and completely, their statutory duties. Failure to do so justifies estopping them from exercising procedural benefits that they might otherwise enjoy.

An appropriate order will issue.

---

5. I do not decide, and intimate no view herein, whether the doctrine of laches would preclude an objection by the trustee. Such a determination should be made on a case-by-case basis.