In re Joseph and Jean FANARAS, Debtors.

M. Ellen Carpenter, Chapter 7 Trustee of the Estate of Joseph and Jean Fanaras, Plaintiff,

v.

Joseph Fanaras, Individually and as guardian over the person of Jean D. Fanaras, Myrna J. Davis, Charles A. Fanaras, Jr., Individually and as Trustee of Willow Construction Realty Trust, and Theresa C. Sparks, Defendants.

Bankruptcy No. 90–13719–CJK.
Adversary No. 00–1542.

United States Bankruptcy Court, D. Massachusetts.

June 25, 2001.

Evans J. Carter, Framingham, MA, for Joseph Fanaras and Myrna Davis.

James F. McNiff, Kittery, ME, for Charles Fanaras.

Joseph Terranova, Melrose, MA, for Theresa Sparks.

### MEMORANDUM OF DECISION

CAROL J. KENNER, Bankruptcy Judge.

This adversary proceeding concerns a dispute over the ownership of five pieces of real property: 30 Lafayette Road, and Willow Street, both in Salisbury, Massachusetts, and, 18D Zabriskie Drive, 50 Hale Street, and 216/217 Worcester

Heights, all in Newburyport, Massachusetts (collectively the "Property"). It also addresses whether Chapter 7 debtors who failed to list certain parcels of real estate and misrepresented their interests in other parcels may recover as an administrative claim amounts they allegedly paid to maintain those properties during the pendency of this case.

At present, the Defendant Myrna Davis holds title to the Property. By her complaint, the Chapter 7 Trustee seeks: a declaratory judgment that, pursuant to 11 U.S.C. § 541, the estate is the owner of the Property; turnover of the Property pursuant to 11 U.S.C. § 542; to avoid transfers of the Property to the Defendant, Myrna Davis, pursuant to 11 U.S.C. § 549(a); and, an order authorizing the Chapter 7 Trustee to sell the Property free and clear of liens pursuant to 11 U.S.C. § 363(f) or, in the alternative, to sell the estate's interest in the Property pursuant to 11 U.S.C. § 363(h).

## FACTS AND PROCEDURAL BACK-GROUND

The Defendant, Joseph Fanaras, and his wife, Jean Fanaras, (the "Debtors") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 12, 1990[1]. The case was converted to one under Chapter 7 on September 10, 1991, and the Chapter 7 Trustee was appointed shortly thereafter. In their schedules filed with the petition, both Debtors listed their residence as 32 Myrtle Avenue, Newburyport, and claimed federal exemptions pursuant to 11 U.S.C.

§ 522(d). The Debtors listed ownership of seventeen separate parcels of real estate, but did not list the now disputed parcels at Willow Street or Worcester Heights. The Debtors received their discharge on December 27, 1991.[2] According to the Chapter 7 Trustee, the Debtors failed to respond to her requests, made in 1992 and 1993, for documentation relating to realty owned by the Debtors in various localities. The Chapter 7 Trustee filed an unopposed motion to compel the Debtors' compliance in January 1994, which the Court allowed. Throughout 1994—1999, the Chapter 7 Trustee conducted, with the Court's permission, sales of many of the Debtors' real estate interests, and she filed notices of abandonment of some others. She filed no notices of abandonment in respect of the Property at the center of this dispute.

The Chapter 7 Trustee commenced this adversary proceeding on October 24, 2000, against the Debtor, Joseph Fanaras[3], Joseph's daughter Myrna Davis, Joseph's nephew Charles Fanaras, Jr., who is trustee of the Willow Construction Realty Trust, and, Theresa Sparks[4]. Defendants, Joseph Fanaras and Myrna Davis, filed a joint answer and counterclaim, and Theresa Sparks and Charles Fanaras each filed an answer.

The Court held a pretrial conference on February 6, 2001, set the trial for April 18, 2001, and issued a pretrial order directing, in pertinent part, that:

1. Fanaras Enterprises, Inc., a real estate development business carried on by Joseph Fanaras, also filed a petition under Chapter 11 on July 12, 1990. That case was voluntarily dismissed on January 9, 1992.

2. The Chapter 7 Trustee has not at this time sought a revocation of discharge, and the Court makes no findings in that regard.

3. Joseph Fanaras appears as a defendant both individually and in his capacity as guardian over the person of Jean Fanaras. Joseph was appointed Jean's guardian by order of a New Hampshire Probate Court dated March 4, 1997. The Probate Court found that Jean was incapacitated.

4. There is no indication in the record of any relationship, familial or otherwise, between the Debtors and Ms. Sparks.

Counsel for the parties shall together prepare and file with the Court on or before April 10, 2001, at 4:00 p.m. a document captioned "Joint Pretrial Statement". The Joint Pretrial Statement shall provide the following information:

1. each party's brief statement of contested facts;

2. each party's statement of contested legal issues; and

3. each party's list of witnesses.

In addition, each party will file copies of all exhibits to be introduced at trial ... Each party will also provide a list of the exhibits for the Court. Failure to include a document as an exhibit may result in the exclusion of that document at trial. Failure to file the Pretrial Statement timely may result in dismissal or default.

If the parties cannot agree on a Joint Pretrial Statement, each party must file a separate Pretrial Statement by April 10, 2001 at 4:00 p.m. The Court will not grant a continuance of these dates unless a party files a written motion-based on exigent circumstances. The parties may not by agreement change these dates.

*Pretrial Order*, at 1.

All parties received the Pretrial Order.

In accordance with the Pretrial Order, the Chapter 7 Trustee timely filed her Exhibits and a Joint Pretrial Statement in which Defendants Theresa Sparks and Charles Fanaras joined.[5] On April 11, 2001, a day after the Pretrial Order deadline, Defendants Joseph Fanaras and Myrna Davis filed their own Pretrial Statement (the "Fanaras Pretrial Statement"), but did not file their exhibits, nor a list of exhibits, to be used at trial. On April 17, 2001, less than twenty-four hours before the trial, Joseph and Myrna filed their exhibits with the Court and, for the first time, served them on the Chapter 7 Trustee.[6] The Court conducted the trial on April 18, 2001.[7]

## THE CHAPTER 7 TRUSTEE'S CASE IN CHIEF

### A. The Chapter 7 Trustee's Position

In her complaint the Chapter 7 Trustee alleges that both Debtors, particularly Joseph, failed to list two parcels of real property on their bankruptcy petition, understated Joseph's beneficial interest in real property held in trust, and transferred real property belonging to the bankruptcy estate without seeking or obtaining the authority of the Court. The specific allegations in respect of the five properties at issue are as follows:

*Lafayette Road, Salisbury*

At the time of the filing of the bankruptcy petition, this 18.5 acre property was owned by two realty trusts[8] of which Joseph's nephew, William Fanaras, was trustee and Joseph was beneficiary. In his bankruptcy petition, Joseph scheduled

---

5. On April 11, 2001, the Chapter 7 Trustee and Theresa Sparks also filed a Stipulation for Entry of Judgment resolving in favor of the Chapter 7 Trustee all claims against Ms. Sparks. The Court approved the Stipulation on April 26, 2001.

6. According to Charles Fanaras' counsel, he received the exhibits less than thirty minutes before trial.

7. At the beginning of the trial, the Chapter 7 Trustee requested judgment against Joseph and Myrna on the basis of their failure to file and serve their exhibits timely in contravention of the Pretrial Order. Despite Defendants' lack of any excuse for their failure, I denied the motion because I was concerned that entry of judgment might be too severe a sanction.

8. The Willow Street Realty Trust and the Eight Point Five Realty Trust.

only 1% and 2% beneficial interests in these two realty trusts. The Chapter 7 Trustee alleges that Joseph was the 100% beneficiary of both trusts and at trial she submitted to the Court a complaint filed by Joseph and Myrna Davis on July 19, 2000, in Essex County Superior Court (civil action number 00–1225–D). In that complaint Joseph avers under oath that he was *always* the 100% owner of the Lafayette Road property and used a realty trust merely as a 'straw'. *Plaintiff's Exhibit 3.*

Post-petition on July 25, 1991, title was conveyed for $1 to a third realty trust, the Willow Construction Realty Trust ("WCRT"), of which Joseph admits he was the sole beneficiary. *Answer of Joseph Fanaras and Myrna Davis,* ¶¶ 56–57. This time nephew Charles Fanaras, was the Chapter 7 Trustee. On March 1, 2000, title was conveyed from WCRT to Joseph and again from Joseph to Defendant, Myrna Davis, each time for consideration described on the deed as "for love and affection". These transfers were made during the pendency of the bankruptcy case without Court approval and without knowledge of the trustee.

*Willow Street, Salisbury*

Joseph took title to this property individually in 1988 but failed to list it on his bankruptcy petition. Post-petition, on October 9, 1992, Joseph conveyed title to WCRT for $1, and then on October 25, 1999, WCRT conveyed title to Myrna Davis for $1. Both transfers were made without Court authority.

*18D Zabriskie Drive, Newburyport*

This parcel was listed in the bankruptcy petition as jointly owned by the Debtors, and was conveyed four times post-petition, all without Court approval. First, on February 4, 1992, the Debtors transferred title to WCRT for $1. Then on November 6, 1995, WCRT transferred title to Theresa Sparks for $1.[9] On July 31, 1996, Sparks conveyed the property back to WCRT for $1, and finally, on October 25, 1999, WCRT conveyed the property to Myrna Davis for $1.

*Hale Street, Newburyport*

This parcel was listed on the bankruptcy petition as jointly owned by the Debtors, and was conveyed three times post-petition without Court approval. On December 27, 1991, the Debtors conveyed title to Theresa Sparks for $1.[9] Sparks conveyed title back to WCRT for $1 on August 12, 1996, and on October 25, 1999, WCRT conveyed title to Myrna Davis for $1.

*Worcester Heights, Newburyport*

Joseph first acquired this property in 1950 but failed to list it on his bankruptcy petition. On February 2, 2000, Joseph conveyed title to Myrna Davis for $1 without Court approval.

The Chapter 7 Trustee alleges that, at the petition date, all five of these properties were beneficially owned by Joseph alone or by the Debtors jointly, and she therefore seeks a declaratory judgment that they are property of the estate pursuant to 11 U.S.C. § 541. Second, she seeks to avoid, pursuant to 11 U.S.C. § 549(a), the post-petition transfers of the Property to Myrna Davis. Third, she demands turnover of the Property to the estate pursuant to 11 U.S.C. § 542, and fourth she seeks authority to sell the Property pursuant to 11 U.S.C. § 363.

It is the Chapter 7 Trustee's position that insofar as there are inconsistencies

9. In her Answer, Defendant Sparks denies having any contemporaneous knowledge of the transfer to her of 18D Zabriskie Drive, or Hale Street, and further states that she never sought, requested, or intended to have the property conveyed to her. *Answer of Theresa Sparks,* ¶¶ 44 and 49.

between the Fanaras Pretrial Statement and their Answer, Defendants Joseph Fanaras and Myrna Davis should be bound by their statement of contested facts and legal issues as set forth in the Fanaras Pretrial Statement. In their Pretrial Statement, they do not contest the Chapter 7 Trustee's right to judgment on all counts of the complaint, but instead, they raise only affirmative defenses and counterclaims.

### B. Joseph Fanaras' and Myrna Davis' Position

In their Answer, Joseph and Myrna admitted only some of the Chapter 7 Trustee's allegations. However, in the Fanaras Pretrial Statement, they no longer contested the Chapter 7 Trustee's right to judgment on all counts of the complaint. Furthermore, at trial Joseph and Myrna conceded that "the facts as stated in the complaint are true and accurate". *Trial Transcript*, at 6.

## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

### A. Joseph Fanaras' and Myrna Davis' Position

Joseph and Myrna raise four issues in their Trial Memorandum and in the Fanaras Pretrial Statement.[10] First, as an equitable matter, they claim the Chapter 7 Trustee should be deemed to have abandoned the Property as a result of her taking no action to administer the same for over nine years. Second, the legal doctrine of merger should be applied so as to consider the Worcester Heights parcel as being subservient to, and part of, the dominant adjacent parcel at 32 Myrtle Avenue, the Debtors' residence. Third, Joseph seeks to change his claim of exemption to claim a homestead exemption under Massachusetts G.L. ch. 188 in respect of the 18D Zabriskie Drive parcel. Fourth, and raised for the first time in their Answer, Joseph and Myrna seek a first priority administrative claim for reimbursement of various real estate taxes, mortgage and condominium expenses they claim to have paid in respect of the Property during the pendency of the bankruptcy.

### B. The Chapter 7 Trustee's Position

The Chapter 7 Trustee argues that the Fanaras Pretrial Statement supersedes the Answer, with the result that any defenses Joseph and Myrna failed to plead in their Pretrial Statement should now be unavailable. She also contends that the defense of merger, not raised in the Answer but appearing for the first time in the Fanaras Pretrial Statement, should also be unavailable. Thus, Joseph and Myrna may only pursue the 'equitable abandonment' defense, the claim of homestead exemption and their priority administrative expense claim.

The Chapter 7 Trustee denies the charge that she abandoned the Property. She asserts that Joseph never filed a declaration of homestead pursuant to M.G.L. ch. 188 and so, at most, he is entitled to the federal exemption under 11 U.S.C. § 522(d). Furthermore, on his bankruptcy petition, Joseph gave his residence as 32 Myrtle Avenue, Newburyport, claimed his exemption on that property, and cannot now claim the same exemption on a different parcel.

On the issue of reimbursement, the Chapter 7 Trustee argues that the equities in this case favor disallowing the claim, and in any event, she contends that Joseph and Myrna have not met their burden in

10. In their Answer to the complaint, Joseph and Myrna also pled as affirmative defenses: estoppel, laches, waiver and the statute of limitations. These defenses were not raised in the Fanaras Pretrial Statement nor at trial.

demonstrating that they did indeed pay the expenses they claim.

### DISCUSSION

As an initial matter, the Court finds that all five parcels of real estate comprising the Property were beneficially owned by the Debtors at the petition date and therefore are property of the estate pursuant to 11 U.S.C. § 541. The Defendants, Joseph Fanaras and Myrna Davis, admitted at trial that all the facts stated in the complaint are true and accurate. Thus, there can be no other possible outcome. Either Joseph individually, or the Debtors jointly, were 100% beneficial owners of the Property at the petition date.

■ At the time of the bankruptcy filing, title to the Lafayette Road property was in the name of two trusts whose sole trustee was Joseph's nephew, William Fanaras. On his schedules, Joseph indicated that he held only 1 and 2 percent of the beneficial interests in these trusts. Later, however, he stated under oath that he was always the 100 percent owner of this property and that the trusts were nothing but "straws." I find that, at the time of the bankruptcy filing, Joseph alone had full legal control over the property and held all the beneficial interest in the property, and that the trusteeship of William was only a straw to conceal Joseph's full control and ownership of the property. Accordingly, legal and equitable title to the Lafayette Road property had merged, such that the trusts were nullities. Joseph himself was the sole owner of the property. Therefore, upon the filing of the bankruptcy petition, the Lafayette Road parcels (including all legal and equitable interest

therein) became property of the bankruptcy estate. 11 U.S.C. § 541.

■ The conveyance of this property, on July 25, 1991, while the Debtors remained debtors in possession under Chapter 11, by the two trusts (who were at the time the ostensible owners of the property) to a new entity, the Willow Construction Trust, was in fact a transfer by Debtor Joseph Fanaras, as debtor in possession, of property of the bankruptcy estate. This transfer was not authorized under the Bankruptcy Code or by the Bankruptcy Court and therefore, pursuant of 11 U.S.C. § 549(a),[11] may and shall be avoided. Likewise, the subsequent transfers of the same property, from the Willow Construction Trust to Joseph and then from Joseph to Myrna Davis, were likewise unauthorized postpetition transfers of property of the estate and, pursuant to § 549(a), may and shall be avoided. By virtue of these avoidances, all legal title and equitable interest in the Lafayette Road property belongs to the bankruptcy estate.

■ The remaining four properties at issue belonged to the Debtors themselves on the date of their bankruptcy filing. Willow Street and Worcester Heights belonged to Joseph alone; 18D Zabriskie Drive and Hale Street belonged to Joseph and Jean jointly. The Debtors' initial postpetition transfers of these properties were made after the case had been converted to Chapter 7. Therefore, at the times of the initial transfers, the Debtors had ceased to be debtors-in-possession and no longer had power to transfer estate assets. Accordingly, their initial postpeti-

---

11. Section 549(a) states:
 Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 (1) that occurs after the commencement of the case; and

 (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.

tion "transfers" of these four properties were simply ineffective, an attempt by the Debtors to transfer property they no longer owned; subsequent conveyances by the transferees were also ineffective for the same reason: they lacked title to the property they were attempting to convey. Therefore, the "transfers" were ineffective and require no avoidance under § 549(a), there being nothing to avoid. The four properties have at all times remained property of the Debtors' bankruptcy estates.[12]

■ However, because another court may view matters differently, I also rule that, insofar as the postpetition transfers of these properties are deemed to have effectively transferred title to the properties out of the estate, all such transfers were unauthorized transfers of property of the estate that, under § 549(a), may and shall be avoided, thus returning the properties to the bankruptcy estate.

■ Turning to the defenses and counterclaims raised, the Court agrees with the Chapter 7 Trustee that Joseph and Myrna are bound by their statement of contested facts and legal issues in the Fanaras Pretrial Statement. The Court's Pretrial Order, pursuant to Federal Rule of Bankruptcy Procedure 7016, controls the subsequent course of the adversary proceeding. The parties were ordered to set out a statement of contested facts and contested legal issues. Joseph and Myrna's only contested facts were (1) whether they were entitled to reimbursement, as a first priority administrative expense, for

mortgage, real estate tax and condominium fees; and (2) whether the 18D Zabriskie Drive parcel could be treated as Joseph's residence for the purposes of claiming a homestead exemption. In their statement of contested legal issues, Joseph and Myrna also raised the issues of equitable abandonment by the Chapter 7 Trustee, and the doctrine of merger with respect to the Worcester Heights parcel. The Defendants conceded all other factual and legal issues and the earlier pled defenses of estoppel, laches, waiver, and statute of limitations are waived. In raising the issue of merger for the first time in their Pretrial Statement, Joseph and Myrna may claim that they are amending their answer which they are free to do at any time by leave of the Court. Without ruling on this issue, this memorandum addresses all four defenses and counterclaims raised by Joseph and Myrna in the Fanaras Pretrial Statement.

1. *Equitable abandonment by the Chapter 7 Trustee*

■ Although Joseph and Myrna admit that they have found no authority whatsoever establishing a doctrine of equitable abandonment, they invite the Court to find that the Chapter 7 Trustee is deemed to have abandoned the Property as a result of her taking no action to administer the same for over nine years. The Court knows of no authority to support their novel theory.[13] The Court declines to adopt such a doctrine, and rejects the characterization of the Chapter 7

---

**12.** Though husband and wife may file a joint bankruptcy petition, commencing one case, their joint filing nonetheless creates two estates that remain separate except to the extent that the court determines to consolidate them. 11 U.S.C. § 302(b) ("After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.").

**13.** Indeed, the Bankruptcy Code specifically allows abandonment only pursuant to § 554 and directs that property not abandoned under this section and not administered in the case shall remain property of the estate. 11 U.S.C. § 554(c) and (d).

Trustee's conduct of this case. First, I note that two of the five parcels (Willow Street and Worcester Heights) were not even scheduled by the Debtors on their bankruptcy petition.[14] Not until Joseph and Myrna commenced their civil action in July 2000, did the Debtors' true interest in these parcels come to light.[15] The Chapter 7 Trustee's actions in commencing this adversary proceeding in October 2000, were, if anything, prompt. Furthermore, it is accepted law that there is no concept of assumed (or 'equitable') abandonment for unscheduled assets. If a debtor fails to schedule an asset, he cannot later claim the asset was abandoned as a result of the Chapter 7 Trustee's failure to administer it. *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995) (there is simply no such concept of assumed abandonment of unscheduled assets. It is not enough that the trustee learns of the property through other means). Second, with respect to the Lafayette Road parcel, the Debtors' schedules listed only minimal ownership interests: 1% and 2% beneficial interests in the realty trusts holding title to the property worth in aggregate only $7,500. Again, not until the commencement of the civil action did Joseph admit to his 100% interest, and even then not to the Chapter 7 Trustee. Third, the Debtors' schedules listed seventeen separate real estate interests, many comprising multiple lots, located in four states and overseas. Fourth, as

of January 1994 the Debtors were still prevaricating and procrastinating over providing necessary information (i.e. deeds, property descriptions, encumbrances) to the Chapter 7 Trustee. Only after the Court allowed the Chapter 7 Trustee's motion to compel compliance was even some of the information forthcoming. Thereafter, and without delay, the Chapter 7 Trustee began in earnest to sell or abandon the real estate interests.

Any delay in the administration of this estate was spawned by the Debtors' false schedules, lack of candor and refusal to cooperate with the Chapter 7 Trustee, not by her level of application or efficiency.

### 2. The Doctrine of Merger

■■■ Joseph and Myrna ask the Court to apply the legal doctrine of merger so as to consider the Worcester Heights parcel as servient to, and therefore part of, the dominant parcel at 32 Myrtle Avenue, Newburyport. In sole support, they argue that the two parcels are adjacent to one another, and the Debtors receive a single bill from the Town of Newburyport for real estate taxes for the two parcels together. They offer no other authority for their proposal.

■■■ The doctrine of merger may apply to situations such as: merger by

**14.** Joseph's excuse for not scheduling Willow Street, is that he was unaware he owned it. Considering Joseph's attempted conveyance of this property into trust in 1992, the Court does not find his testimony credible. With regard to Joseph's failure to list the Worcester Heights property, he alleged this was because the property is not a separate parcel, but is merely part of 32 Myrtle Avenue. Joseph's explanation is undercut by his attempt to convey Worcester Heights, as a separate parcel, during the bankruptcy case.

**15.** Defendant Charles Fanaras discloses, and Joseph and Myrna do not dispute, that it was he who brought all of these matters to the attention of the Chapter 7 Trustee in August 2000 shortly after the civil action was commenced. *Answer of Charles Fanaras*, ¶ 68. Joseph and Myrna sued Charles and others, for, among other things, breach of contract alleging that they reneged on their promises to act as straws for Joseph, and requesting that they be enjoined from transferring any of the realty trusts' corpus or interfering with Joseph's management of said trusts.

deed [16], extinguishment of an easement by merger [17], or merger of estates [18]. It simply does not apply to the facts before me in this case. In any event, Joseph's own actions contradict his argument. His attempt to convey the Worcester Heights parcel during the bankruptcy case suggests he knew very well that this property was separate and distinct from 32 Myrtle Avenue.

### 3. Joseph Fanaras's Claim of Homestead in 18D Zabriskie Drive

■ The Chapter 7 Trustee asserted at trial that no declaration of homestead pursuant to M.G.L. ch. 188 was ever filed pre-petition in respect of any of real property owned by the Debtors. Joseph has made no attempt to rebut that assertion. In fact, Joseph has provided no evidence, documentary or otherwise, to support his claim of entitlement to a $125,000 [19] homestead under M.G.L. ch. 188. In his petition, Joseph elected the federal exemptions pursuant to 11 U.S.C. § 522(d) and he is bound by his election. I find no evidence to support his current claim for a state homestead exemption.

■ Moreover, Joseph has averred many times that, at the time of filing the petition, his residence was 32 Myrtle Avenue. He gave 32 Myrtle Avenue as his address on the front page of the petition and again as his residence on Schedule B–1—Statement of All Property of the Debtor: Real Property. In their Statement of Financial Affairs, responding to question 1(c) "Where do you now reside?", the Debtors answered "32 Myrtle Avenue, Newburyport (Wife), 33 Main Street, Salisbury (Husband)". Responding to question 1(d) "Where else have you resided during the 6 years immediately preceding the filing of the original petition herein?", Jean Fanaras stated " no other place" and Joseph Fanaras stated "32 Myrtle Avenue, Newburyport". In Schedule B–4—Statement of Property Claimed as Exempt, Joseph again listed his residence as 32 Myrtle Avenue, and gave the location of his household furniture, clothing, jewelry and automobile as 33 Main Street, Salisbury.[20] In trial testimony, Joseph contradicted his earlier statements, now claiming that at the time of filing his petition, he lived half of the time at 33 Main Street, and the other half at 5 Fanaras Drive, where his office was located. He now claimed that 18D Zabriskie Drive was being refurbished at that time, but otherwise would have been his home. His only excuse for apparently giving the wrong address for his residence was that he did not prepare the petition himself, but merely signed sched-

---

**16.** Where acceptance of a deed ordinarily merges all prior covenants in the deed, thus discharging all obligations contained in the purchase and sale agreement except those specified in the deed itself. *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 333 N.E.2d 421 (1975).

**17.** Easement is extinguished by merger when ownership of the dominant and servient estates is unified, since an owner of land cannot have an easement in his own estate in fee. *Ritger v. Parker*, 62 Mass. 145 (1851).

**18.** Where the original estate in fee simple may have been divided into lesser estates, such as an estate for years or for life, and these lesser estates meet in one and the same person the doctrine of merger applies, and the lesser estates are merged in a larger, or fee simple estate. The doctrine does not apply to different divisions of a tract of land. Tiffany on Real Property, vol. 1, ss 17 to 34, inclusive.

**19.** Effective July 12, 1990, the date of the petition, the Massachusetts homestead exemption was $125,000.

**20.** Joseph did not list 33 Main Street as a property that he owned, and in his schedule of expenses, he listed rent of $550 including utilities.

ules prepared by a cousin. He had no excuse for waiting until now to set the record straight.

 A debtor is assumed to have read his bankruptcy petition and schedules before signing them under pains and penalties of perjury, and he is responsible for their contents. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1387 (9th Cir.1988). Indeed his failure to read schedules before signing them indicates a complete disregard for the duty of honesty imposed by the Bankruptcy Code. *In re Beshears,* 196 B.R. 468, 476 (Bankr. E.D.Ark.1996). Not once, but six times in the petition Joseph listed his home as either 32 Myrtle Avenue, or 33 Main Street. In the nine ensuing years, he never contradicted any of those statements until the Chapter 7 Trustee brought this adversary proceeding. Only then, did Joseph attempt to claim that 18D Zabriskie Drive was his home at the petition date. The Court does not find Joseph's trial testimony credible. He and his wife each claimed and took a federal exemption of $7,500 on the property at 32 Myrtle Avenue that was later foreclosed on. The Court finds that to be the only homestead exemption to which they are entitled.

### 4. First Priority Administrative Claim for Reimbursement

In their Answer, Joseph and Myrna seek, for the first time, a first priority administrative claim against the estate, pursuant to 11 U.S.C. §§ 503(b) and 507(a)(1). They claim to have incurred expenses related to the Property during the pendency of this case and ask for reimbursement.[21] The expenses claimed comprise real estate taxes on all five parcels, mortgage payments on Lafayette Road, and condominium, water and sewer charges on 18D Zabriskie Drive. This issue merits detailed analysis.

### Analysis

 Pursuant to 11 U.S.C. § 503(b), administrative expenses must be the actual and necessary costs of preserving the estate. The bankruptcy court retains broad discretion in awarding administrative expenses and section 503(b) is construed narrowly to maximize value for creditors. *E.g. In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988)(bankruptcy court has broad discretion when awarding administrative claims); *In re Molnar Bros.,* 200 B.R. 555 (Bankr.D.N.J.1996)(administrative claims are construed narrowly in order to maximize the value of the estate for all creditors). The burden is on the claimant to substantiate his claim. *In re Hemingway Trans., Inc.,* 993 F.2d 915, 925 (1st Cir.1993).

### A. Have the claimants met the burden of substantiating their claim?

 Joseph and Myrna attempted to substantiate their claim by the use of summaries of their alleged expenditure, prepared by Myrna. At the commencement of the trial, the Chapter 7 Trustee objected to the admission of the summaries into evidence on the grounds that they (and the backup documentation they purport to summarize) had not been timely filed with the Court and served on the other parties as required by the Pretrial Order and did not comply with Fed.R.Evid. 1006. The Court reserved a decision on the Chapter 7 Trustee's objection at that time. Rather

---

**21.** As with Joseph's recent claim of a state homestead exemption for Zabriskie Drive, the Court notes that the Defendants gave no inkling of their intent to claim administrative expenses until the Chapter 7 Trustee learned of the civil action involving the Property and brought this adversary proceeding.

than exclude the summaries wholesale at the outset of the trial, the Court elected to treat each one on a case by case basis.

 The proponent of a summary pursuant to Fed.R.Evid.1006 must establish a foundation that (1) the underlying documents upon which it is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection. The proponent must also show that the summarized material is itself admissible and that the summary is accurate. *Wright v. Southwest Bank*, 554 F.2d 661 (5th Cir.1977). Pursuant to Fed.R.Evid. 602, a witness may not testify to a matter unless evidence is introduced to support a finding that the witness has personal knowledge of the matter. Where it is clear that the witness is relying upon the statements of others, the witness' testimony is hearsay.

Both Joseph and Myrna testified as to their alleged expenditures, but neither was able to lay a proper foundation for admission of the summaries into evidence. Myrna explained that she had first come into Joseph's life in September 1998 when she learned that he was her father. At some point thereafter, she began living at 18D Zabriskie Drive and helping her father handle his finances. Although she testified that she compiled the summaries of purported expenditure, she confessed that she had no personal knowledge of Joseph's finances or property interests prior to September 1998. She said that she had compiled the summaries from copies of tax bills, bank documents, and the like. Those underlying documents were never offered as evidence and were not admissible.[22] Most importantly, they were not made available to the Chapter 7 Trustee at any

time prior to or during the trial. At best, Myrna could testify to personal knowledge of her own payments made from September 1998 onwards, but she was not competent to testify to the accuracy of any records pertaining to the period prior to that date. Moreover, as the Chapter 7 Trustee observed in her objection, the summaries covered the period 1990—2001, whereas the back up documentation, aside from not being made available to the Chapter 7 Trustee, was far from complete. *Trial Transcript*, at 11. For example, attached to a summary of alleged expenditure on Lafayette Road, were photocopies of the face of one check dated in 1995, one dated 1996, two dated 1997, but nothing earlier. Supporting documentation attached to the summaries for the other parcels was similarly incomplete, and again not provided to the Chapter 7 Trustee as required by Fed.R.Evid. 1006, or the Court's Pretrial Order. Accordingly, I found that no proper foundation having been laid, the summaries were inadmissible. The balance of Myrna's testimony was relevant only as evidence of her own payments made after September 1998, and this was inconclusive. No reliable testimony was proffered from which an amount representing Myrna's alleged 1998—2001 expenditure could be ascertained.[23]

Joseph's testimony was no more elucidating on the question of the amounts he allegedly paid in respect of the Property, and he too failed to establish a proper foundation for the admission of the summaries. It was clear that he had no recollection of the amounts claimed, other than perhaps the monthly condominium fee for 18D Zabriskie Drive. Counsel at-

---

**22.** The Defendants made no attempt to lay a foundation for any of the supporting documentation to be admitted as business records.

**23.** The Court also notes that neither the Debtors nor Myrna has made payments to the estate for occupation of the 18D Zabriskie Drive property.

tempted to refresh Joseph's memory by use of the summarized data, but it was evident to the Court that Joseph was doing nothing more than reading from summaries that the Court had already ruled were inadmissible. Although, it would have been acceptable for Joseph to have used a summary to jog his memory, it was not permissible for him to read an otherwise inadmissible document into evidence. Joseph's testimony was clear however as to the source of many of the payments for which he and Myrna now claim reimbursement. Under cross examination by the Chapter 7 Trustee and counsel for Charles Fanaras, Joseph admitted that most, if not all, of the payments he claimed to have made were in fact made by other entities. There was evidence that, other than some payments claimed by Myrna, the rest of the checks purportedly used to pay real estate taxes and mortgage obligations were drawn on accounts of business entities, such as Fanaras Enterprises, Willow Street Construction Company, Inc., Willow Construction Co. Inc., or Willow Construction. Joseph presented no credible evidence of any amounts he paid personally in respect of the Property.

■ Admission of the summaries rests within the sound discretion of the Court. *Wright v. Southwest Bank*, 554 F.2d at 661. No proper foundation for their admissibility was laid and they were properly excluded. Thus, Joseph and Myrna have failed to sustain their burden on their claim for reimbursement. At best, Myrna's testimony might have supported a much smaller claim on her own behalf, but no specific amounts were asserted, and no documentary support was provided.

Standing alone, Joseph and Myrna's failure to substantiate their alleged expenditure justifies denial of their claim, but in addition, there are other equally compelling grounds for disallowance.

**B.** *The claim does not meet the legal standard for an administrative expense.*

■ Many courts, including the First Circuit, interpret 'actual and necessary costs of preserving the estate' to encompass two requirements: (1) the expense must have been incurred by the estate, and (2) it must have benefitted the estate in some demonstrable way. *In re Hemingway Trans., Inc.*, 954 F.2d 1, 5 (1st Cir.1992) *citing In re Mammoth Mart, Inc.* 536 F.2d 950, 954 (1st Cir.1976). In addition, there are examples in case law of exceptions to the second 'benefit to the estate' requirement. Here, courts have recognized a category of allowable administrative expenses resulting in no discernible benefit to the estate, in instances where fundamental fairness required that the claimant's right to reimbursement take precedence over the rights of general creditors. *In re Hemingway Trans., Inc.*, 993 F.2d at 929; *In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir.1985).

Joseph and Myrna contend that, applying the first of these legal standards, their claim should be allowed both as an actual and necessary cost of preservation that did benefit the estate. On the alternate ground, they suggest that fundamental fairness and equity requires that they be reimbursed ahead of the rights of general creditors.[24] Initially, the Defendants cite

---

**24.** In support of their argument, Joseph and Myrna cite from a line of cases in which courts have applied the concept of fundamental fairness to allow administrative claims by entities injured by the debtor-in-possession's operation of the business, even though their claims did not arise from transactions that were necessary to preserve the estate. *E.g. Charlesbank*, 755 F.2d at 202; *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20

several cases in support of the general principle that real estate taxes and mortgage payments may be proper subjects for administrative claims if they satisfy the two requirements that qualify an expense as an actual and necessary cost of preserving the estate. The Chapter 7 Trustee has not disputed this general principle. However, some of the other cases cited by the Defendants deserve closer inspection.

In *In re Mailman Steam Carpet Cleaning, Inc.*, 256 B.R. 240 (Bankr.D.Mass. 2000), the issue was whether the trustee should be liable for real estate taxes incurred over the period between conversion of the case from chapter 11 to chapter 7, and abandonment by the trustee two years later. The court found that the taxes were not the individual liability of the debtor and must be paid by the estate/trustee. The reasoning given by the court is illuminating: the trustee must pay, *given the complete lack of any reasonable explanation from the trustee for his delay* in administering the property. Given the trustee's control of the property, the expenses were found to have been incurred by the estate and to have benefitted the estate, and were given administrative status. Additionally, fundamental fairness required that where the trustee allowed the property to languish for two years before finally returning it to the debtor, taxes were held to be the trustee's responsibility. Clearly, under these particular circumstances, the equities favored the innocent debtor who had no ability to exercise any control over the property for over two years insofar as the trustee's role eliminated the debtor's ability to use, rent or convey the property. *Mailman*, 256 B.R. at 241.

A case heavily cited in the *Mailman* opinion is also instructive, *In re Trowbridge*, 74 B.R. 484 (Bankr.E.D.Pa.1987). Here, the court found that post-petition property taxes were incurred by the estate, benefitted the estate, and therefore were an administrative expense, in that the property in question was property of the estate pursuant to 11 U.S.C. § 541, *and had been under the trustee's exclusive control since the inception of the case.* Elaborating, the court stated:

> The trustee, on behalf of the estate, has control of real property and this property has received all of the benefits and services provided by local government for which local property taxes are intended as some recompense.

> *The debtor has been unable to alienate or control the use* of the property. *Conversely, the trustee has been free to use, sell or lease* the property for the benefit of the estate.

74 B.R. at 485–86 (emphasis added).

In both these cases, it was the trustee's control of the property coupled with the debtor's inability to control, that led the courts to allow administrative claims.

Unlike the trustees in *Mailman* and *Trowbridge*, the Chapter 7 Trustee here has caused no unreasonable delay in the administration of this estate. Joseph Fanaras has not had to sit by and watch his property languish with no ability to exercise any control over it. Far from it.

L.Ed.2d 751 (1968). The Court does not find these cases apposite to the facts presented here. For example, in *Charlesbank*, the issue was whether a civil compensatory fine for violation of an injunction by the debtor qualified as an administrative expense under Chapter 11. The court found that fairness required that the victims of the debtor's intentional violation deserved to be paid from the estate. 755 F.2d at 202–203; *In re N.P. Mining Co.*, 963 F.2d 1449 (11th Cir.1992) (fairness to innocent victims of a trustee's negligence supports administrative status for post-petition tort claim). *Charlesbank* and cases like it, involving innocent, injured third party claimants, and often coupled with negligence by the debtor-in-possession or trustee, are not relevant to this case.

Joseph has exercised complete control over the Property in question throughout this case, in derogation of his duties as a debtor. He has either intentionally failed to schedule it, or attempted to hide the true extent of his interest in it, or actually hampered the Chapter 7 Trustee in the exercise of her duties by his obfuscation and lack of candor. In a deposition before the Chapter 7 Trustee, Joseph admitted that he transferred properties out of his name to 'straws' to help him with his bankruptcy case, so that "when the dust settled, it would all be taken care of." *Trial Transcript* at 83. The inescapable conclusion to be drawn from Joseph's words and actions in this case is that he hoped to hide the Property from the Chapter 7 Trustee and his creditors and continue to enjoy it after this case was closed. The Defendants, not the Chapter 7 Trustee, have controlled, used and conveyed the Property during this case, and they have done so with complete disregard for the estate, its creditors, and their own statutory responsibilities. Both Joseph and, to a lesser extent Myrna, have enjoyed the use of the Property to the exclusion of the estate, for most of the pendency of this case. Any carrying costs incurred by Joseph and Myrna while they controlled and enjoyed the property did not inure to the benefit of the estate but rather benefitted the Defendants themselves, and do not qualify as administrative expenses.

C. *Policy grounds for disallowance of the claim.*

In addition to disallowing the claim on the grounds set forth above, there are also clear policy reasons why the Defendants' claim should be denied. The twin goals of bankruptcy law, debtor relief and equitable distribution, are frustrated when debtors are dishonest. Important policy reasons favor creating compelling incentives for debtors to be forthcoming about all of their assets. *Boroff v. Tully*, 818 F.2d 106, 110 (1st Cir.1987) (the very purpose of the bankruptcy code is to make certain that those who seek its shelter do not play fast and loose with their assets or with the reality of their affairs. The Code is designed to insure that complete, truthful, and reliable information is put forward at the outset of the case). In exchange for turning over all their nonexempt property for distribution to creditors, individual debtors receive a discharge from their debts and an opportunity for a fresh start, taking their exempt property with them. Voluntary compliance with the obligation to list and turn over all property of the estate is essential.

██ Debtors who desire the full benefits of bankruptcy relief must fully comply with their duties under the Bankruptcy Code. Failure to do so justifies denying them benefits they might otherwise enjoy, and there are many examples to be found in the case law. *In re Mahan*, 104 B.R. 300, 303 (Bankr.E.D.Cal.1989) (debtors, who filed untruthful and inaccurate schedules thus causing a valuable asset to lie undiscovered for several years, were estopped from objecting to timely filed proofs of claim); *In re Conklin*, 482 N.W.2d 444 (Iowa 1992) (debtors barred from exempting undisclosed assets); *In re Roberts*, 81 B.R. 354 (Bankr.W.D.Pa.1987) (same). The Debtors in this case intentionally failed to list certain valuable assets, misrepresented their interests in other assets, and essentially engaged in a "shell game" in an attempt to defraud creditors. As one court so aptly said, "the Debtors are the architects of the mischief in this case" and therefore the equities should be constructed in favor of the Chapter 7 Trustee. *Mahan*, 104 B.R. at 301.

## CONCLUSION

For all these reasons, I find for the Chapter 7 Trustee on all counts of the complaint, Joseph Fanaras' claim of homestead exemption for 18D Zabriskie Drive is denied with prejudice, and the administrative claim of Joseph and Myrna Davis is denied with prejudice. A separate order will enter.

### JUDGMENT

This adversary proceeding having been duly tried, and for the reasons stated in the Memorandum of Decision issued today,

The Court hereby ORDERS, ADJUDGES and DECLARES that judgment shall and hereby does enter for the Plaintiff, M. Ellen Carpenter, as she is Chapter 7 Trustee in this bankruptcy case of Joseph and Jean Fanaras, on all counts as follows:

1. The real property located at 30 Lafayette Road, f/k/a 48 Lafayette Road, Salisbury, Massachusetts, and further described in a deed recorded at the Essex Registry of Deeds at Book 16220, Page 297, including all equitable and legal title and interest therein, is property of the bankruptcy estate of Debtor Joseph Fanaras. The postpetition conveyances of the property from the Willow Street Realty Trust and the Eight Point Five Realty Trust (a/k/a "8.5 Realty Trust") to the Willow Construction Realty Trust, then from Willow Construction Realty Trust to Joseph Fanaras, and then from Joseph Fanaras to Myrna Davis, are hereby avoided and, pursuant to 11 U.S.C. § 551, preserved for the benefit of the estate.

2. The real property consisting of unimproved land located at Joy Road and Willow Street, Salisbury, Massachusetts, and further described in a deed recorded at the Essex Registry of Deeds at Book 16202, Page 561, including all equitable and legal title and interest therein, is property of the bankruptcy estate of Debtor Joseph Fanaras. The postpetition conveyances of the property from Joseph Fanaras to Willow Construction Realty Trust, then from Willow Construction Realty Trust to Myrna Davis, were and are void and ineffective; nonetheless, if and insofar as those transfers are deemed to have been effective, they are hereby avoided and, pursuant to 11 U.S.C. § 551, preserved for the benefit of the estate.

3. The real property located at Unit D, 18 Zabriskie Drive, Newburyport, Massachusetts, and further described in a deed recorded at the Essex Registry of Deeds at Book 16202, Page 556, including all equitable and legal title and interest therein, is property of the bankruptcy estate of Debtors Joseph Fanaras and Jean Fanaras. The postpetition conveyances of the property from Joseph Fanaras and Jean Fanaras to Willow Construction Realty Trust, then from Willow Construction Realty Trust to Theresa Sparks, then from Theresa Sparks to the Willow Construction Realty Trust, and then from the Willow Construction Realty Trust to Myrna Davis, were and are void and ineffective; nonetheless, if and insofar as those transfers are deemed to have been effective, they are hereby avoided and, pursuant to 11 U.S.C. § 551, preserved for the benefit of the estates.

4. The real property known as Lot 50 on Hale Street, Newburyport, Massachusetts, and further described in a deed recorded at the Essex Regis-

try of Deeds at Book 16202, Page 558, including all equitable and legal title and interest therein, is property of the bankruptcy estates of Debtors Joseph Fanaras and Jean Fanaras. The postpetition conveyances of the property from Joseph Fanaras and Jean Fanaras to Theresa Sparks, then from Theresa Sparks to the Willow Construction Realty Trust, then from the Willow Construction Realty Trust to Myrna Davis, were and are void and ineffective; nonetheless, if and insofar as those transfers are deemed to have been effective, they are hereby avoided and, pursuant to 11 U.S.C. § 551, preserved for the benefit of the estates.

5. The real property known as Lots 216 and 217, Worcester Heights, Newburyport, Massachusetts, and further described in a deed recorded at the Essex Registry of Deeds at Book 3776, Page 466, including all equitable and legal title and interest therein, is property of the bankruptcy estate of Debtor Joseph Fanaras. The postpetition conveyances of the property from Joseph Fanaras to Myrna Davis was and is void and ineffective; nonetheless, if and insofar as those transfers are deemed to have been effective, they are hereby avoided and, pursuant to 11 U.S.C. § 551, preserved for the benefit of the estate.

6. The defendants shall forthwith turn over possession of the real property described in ¶¶ 1–5 above to the Chapter 7 Trustee.

7. As set forth above, all title and interest in the above-described parties belongs to the Debtors' bankruptcy estates; therefore, the trustee requires no authority under 11 U.S.C. § 363(h), and her claim for authority under § 363(h) is moot. The Court denies without prejudice the Trust-ee's request for authority under 11 U.S.C. § 363(f) to sell the properties free and clear of liens, but this denial is without prejudice to renewal of such request as to each of the parcels when the Trustee has found a buyer for the parcel.

8. The counterclaims of Joseph Fanaras and Myrna Davis are dismissed with prejudice on the merits.