In re Jon D. SHOOK; Sharon
K. Shook, Debtors.

Jon D. Shook; Sharon K.
Shook, Appellants,

v.

CBIC; Kathleen A. McDonald, Chapter
13 Trustee, Appellees.

BAP No. NV–01–1048–MaPRy.

Bankruptcy No. 96–20375 LBR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 20, 2001.

Filed May 22, 2002.

Robert C. LePome, Las Vegas, NV, for Jon and Sharon Shook.

David K. Rosequist, Las Vegas, NV, for Contractors Bonding & Insurance Co.

Before MARLAR, PERRIS and RYAN, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

This appeal is an example of how chapter 13[1] debtors can lose the ability to

---

1. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. "Rule" references are either to the Federal Rules of Bank-

challenge a filed claim by failing to object, despite ample opportunities to do so, until years after the trustee has paid the claimant in full.

The creditor filed a secured proof of claim. The chapter 13 plan was silent regarding the secured claim and lien.

When the chapter 13 trustee noticed his intention to pay a 100% distribution to the creditor on its deemed allowed secured claim, unless the debtors objected to the claim within 30 days, the debtors still did not object.

Then, four and one-half years after plan confirmation, the debtors objected to the secured creditor's claim, seeking disallowance thereof, and turnover of the funds paid to it. The bankruptcy court applied laches[2] and denied their request due to their unreasonable and prejudicial delay.

In AFFIRMING on the basis of laches, we also hold that it was the debtors' burden to challenge a timely filed proof of secured claim, because their plan did not expressly provide that the claim would be treated as unsecured and that the creditor's lien would be avoided.

### FACTS

Jon and Sharon Shook ("Debtors") filed a chapter 13 bankruptcy petition on January 25, 1996. They listed residential real property worth $100,000, which was fully encumbered by secured debt. Seven secured claims were listed, which totaled $113,200. Also listed were priority tax claims in the approximate sum of $100,000.

In their Statement of Financial Affairs, Debtors indicated that there was a judgment against them held by Contractors Bonding and Insurance Co. ("CBIC"). They listed CBIC as an *unsecured* nonpriority creditor with a debt of $15,145.66. CBIC was placed on the creditor matrix, and was served with notice of the filing and with a copy of the chapter 13 plan.

CBIC filed a timely proof of *secured* claim for $11,864.83, for the balance due on the judgment. It was undisputed that the judgment had been recorded almost one year prior to bankruptcy, on February 14, 1995. *See* Nev.Rev.Stat. 17.150 (West, WESTLAW through 1999 Sess.) (providing that a recorded judgment becomes a lien upon all the debtor's nonexempt real property in the county where the judgment is recorded).

Debtors proposed a five-year plan designed to pay only the secured and priority tax debt, with no dividend to the unsecured creditors. The plan called for 59 monthly payments, with the 60th and final payment to be made from the proceeds of a sale or refinancing of their residence.

The plan acknowledged an IRS secured claim ($2,335), recorded on December 5, 1995, and the unsecured priority claims of both the IRS ($77,000) and the State of Nevada ($22,000).[3]

CBIC was not acknowledged or otherwise mentioned in the plan provisions, either as a secured or an unsecured creditor. CBIC did not object to the plan.

---

ruptcy Procedure ("Fed.R.Bankr.P."), Rules 1001–9036, or the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), as made applicable by the Bankruptcy Rules.

**2.** Laches is an equitable doctrine which "may apply when there is an unreasonable or unexcused delay by the party asserting the claim and the defending party is prejudiced by the

lack of diligence." *Greenwell v. Carty (In re Carty),* 149 B.R. 601, 603 (9th Cir. BAP 1993).

**3.** The plan did not mention the State of Nevada's secured proof of claim for a tax lien in the amount of $29,636.30. *See* Notice of Trustee's Intent to Pay Additional Claim, July 29, 1996.

The plan was confirmed on March 12, 1996. The court found that the plan complied with § 1325(a)(5), and the confirmation order stated, in pertinent part:

F. With respect to each allowed secured claim provided [sic] by the plan,[4] the holder of such claim either accepted, or was deemed to have accepted, the plan [sic] in the alternative—

 a. (i) the plan provides that the holder of such claims retain the lien securing such claims; and

 (ii) the value, as the [sic] effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . .

Order Confirming Debtor(s) Plan, March 12, 1996.

Paragraph (5)(c) of the confirmation order further set forth the order of payment. After priority claims and trustee fees, the trustee was to pay

Creditors whose claims are timely filed and allowed in such amount and order of preference as may be provided by the plan or as may be required to provide adequate protection of the interest of any entity with an interest in the property of the estate.

*Id.*

On June 17, 1996, the trustee filed and served a "Notice of Trustee's Intent to Pay Claims." Listed first was the CBIC claim for $11,864.83, which the trustee indicated was classified as "SECURED" and would be paid 100% plus interest. The notice

advised that the claim would be deemed allowed pursuant to § 502(a), and deemed approved by Debtors for distribution pursuant to the confirmed plan, unless Debtors filed a written objection to the claim within 30 days of the notice date. No objection was filed in response to the notice, and CBIC was thereafter paid a total of $14,242.18.

Approximately four and one-half years later, when Debtors were selling their home in accordance with the confirmed plan, they discovered and maintained that funds "intended for IRS [had been] erroneously paid to CBIC." Debtors' Reply to Opposition, Jan. 23, 2001, p. 2. Although CBIC had provided a Satisfaction of Judgment in order to release its lien in connection with the sale, escrow had not closed, apparently, because the IRS had not been paid and its lien still attached.

Therefore, on December 20, 2000, Debtors filed an objection to the CBIC proof of claim on the grounds that it was, in actuality, an unsecured claim, and had been treated as such in the plan. In addition, Debtors sought the return of the money paid to CBIC. Debtors stated that CBIC's Satisfaction of Judgment, given in connection with the sale, had not yet been recorded and could be returned.

CBIC opposed the motion on the grounds that Debtors' objection was untimely. CBIC stated that, at Debtors' behest, it had already given a Satisfaction of Judgment to a title company so that Debtors could sell or refinance their residence. CBIC asserted that these facts constituted waiver by Debtors.[5]

---

**4.** Section 1325(a)(5) uses the term of art "provided for by the plan." 11 U.S.C. § 1325(a)(5).

**5.** To establish waiver, a party must show an intentional relinquishment of a known right.

*See McKellar v. McKellar,* 110 Nev. 200, 871 P.2d 296, 297 (1994). The bankruptcy court did not make any factual findings regarding waiver. Whether a waiver has been established is a question of fact. *Id.* While the parties argued the application of waiver to the

In their reply pleading, Debtors argued, without citation to any Bankruptcy Code provision or Rule, that the CBIC claim was unsecured because the residence was overencumbered by senior liens and/or was exempt property.

A hearing on Debtors' objection took place on January 25, 2001. When asked by the court why Debtors had not objected to CBIC's claim four years before, their attorney stated that he had "overlooked it." Transcript, Jan. 25, 2001, p. 3:9.

The bankruptcy court found an absence of a plan provision for CBIC's secured claim, and that CBIC was therefore entitled to payment on its secured claim because it had filed a proof of secured claim to which no objection had been made. Therefore, the court held that Debtors could not use general plan provisions either to avoid CBIC's lien or to reclassify CBIC's claim.[6] The court overruled Debtors' objection on the grounds of laches. On February 6, 2001, the court entered its order denying Debtors' objection, and they timely appealed.

### ISSUES

1. Whether CBIC's secured claim was deemed allowed, so that it was enti-

tled to distribution under the chapter 13 plan provisions.

2. Whether Debtors' chapter 13 plan provisions bound CBIC to unsecured status.

3. Whether the bankruptcy court abused its discretion by denying Debtors' claim objection on the grounds of laches.

### STANDARDS OF REVIEW

 The panel reviews issues of law under the *de novo* standard, and reviews findings of fact for clear error. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir.1997). Interpretation of the Bankruptcy Code presents legal questions, which are reviewed *de novo*. *Cal. Cent. Trust Bankcorp v. Been (In re Been)*, 153 F.3d 1034, 1036 (9th Cir.1998).

 We review the bankruptcy court's decision to bar a claim on the basis of laches for an abuse of discretion. *Tel-ink, Inc. v. United States*, 24 F.3d 42, 47 (9th Cir.1994). A bankruptcy court abuses its discretion if its judgment was based on clearly erroneous factual findings or erro-

---

bankruptcy court, they did not brief this issue on appeal. Therefore, the issue of waiver has been waived. *See Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.)*, 220 B.R. 74, 77 (9th Cir. BAP 1998), *aff'd mem.*, 21 Fed.Appx. 723 (9th Cir. Nov. 1, 2001).

CBIC alternatively argued, in bankruptcy court, that it held a nondischargeable priority tax claim. The basis for CBIC's judgment was Debtors' failure to indemnify it, as surety, under the parties' business indemnity agreement. Debtors had promised to reimburse CBIC for loss and expense incurred under CBIC's bond. The Nevada Department of Taxation made a claim for sales tax on the bond, and CBIC paid out $13,800. The State then assigned its claim to CBIC to the extent of the payment. The bankruptcy court did not resolve the issue of whether CBIC was a priority creditor, and we need not reach this

issue, since our disposition affirms the bankruptcy court's ruling on the basis of CBIC's secured status.

6. Additionally, the court found there was a lack of valuation evidence to support Debtors' allegation that the claim was unsecured. We do not need to reach the merits of Debtors' objection, however, because we affirm on alternate grounds.

Moreover, Debtors did not move for lien avoidance, pursuant to § 522(f)(1), nor did they cite this code provision until their reply brief in this appeal. Therefore, we decline to consider any issues concerning lien avoidance which were not first presented to the bankruptcy court. *Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*, 868 F.2d 335, 339 (9th Cir.1989).

neous legal conclusions. *See Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1557 (9th Cir.1996).

### DISCUSSION

This case presents several undercurrents of controversy surrounding the claims allowance process in chapter 13, the treatment of secured claims, and the binding effect of a chapter 13 plan.

■ We begin with the longstanding principle that a secured creditor may bypass a debtor's bankruptcy proceedings and enforce its lien in the usual way, because unchallenged liens pass through bankruptcy unaffected. *See Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); *Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *See also Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (bankruptcy extinguishes *in personam* claims against the debtor but generally has no effect on *in rem* claims against the debtor's property).

In this case, CBIC filed a proof of secured claim and was a voluntary participant in the bankruptcy proceedings. *See* Fed.R.Bankr.P. 3001, 3021; 11 U.S.C. § 502(a). Nevertheless, Debtors contend that their bankruptcy schedules and the confirmed plan determined, without objection from CBIC, that CBIC's claim was actually an unsecured claim and would be treated as such. They also argue that they were entitled to object to the allowance of the secured claim four and one-half years after confirmation, pursuant to the claims allowance procedures of § 502(b) and Rule 3007.

CBIC argues, in counterpoint, that its lien could not be avoided by the plan provisions alone, and that any objection to its properly filed proof of secured claim was barred by the confirmed plan. Alterna-

tively, it maintains that Debtors waited an unreasonably long time before "discovering" the fact of the trustee's payment and the filing of their claim objection.

### A. CBIC's Secured Claim was Deemed Allowed

#### 1. Section 502

To be paid from the estate, a claim must be "allowed" under § 502 in one of three ways: "first, a proof of claim is filed or deemed filed and no party objects; second, a claim is allowed by the court after an objection is filed; and third, a claim is estimated by the court under the provisions of section 502(c)." 4 *Collier on Bankruptcy* ¶ 502.01, p. 502–9 (Lawrence P. King et al. eds., 15th ed. rev.2002). The CBIC claim fell into the first category, and was "deemed" allowed.

■ Generally, absent a written objection from a party in interest, a claim is "deemed allowed" upon the filing of a timely proof of claim. 11 U.S.C. §§ 501(a), 502(a); Fed.R.Bankr.P. 3002. *See Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy),* 130 B.R. 318, 320 (9th Cir. BAP 1991) (filed claim is "presumptively valid" unless a written objection is filed). A proof of claim properly executed and filed is *prima facie* evidence of the validity and amount of the creditor's claim. Fed.R.Bankr.P. 3001(f). Deemed allowance entitles the claimant to participate in a distribution of the estate's assets. *Ashford v. Consol. Pioneer Mortgage (In re Consol. Pioneer Mortgage),* 178 B.R. 222, 225 (9th Cir. BAP 1995), *aff'd mem.,* 91 F.3d 151, 1996 WL 393533 (9th Cir.1996); Fed.R.Bankr.P. 3021.

■ Although a claim may initially be deemed allowed, it may thereafter be disallowed, in full or in part, following affirmative action by the debtor or trustee and by court order.

If an objection to the proof of claim is filed, a "contested matter" is initiated, sometimes in the form of an adversary proceeding. *See* 11 U.S.C. § 502(b); Fed. R.Bankr.P. 3007.[7] In that event, the proof of claim will not be allowed until the bankruptcy court determines the proper amount of the claim. *See* 11 U.S.C. § 502(b).

▓▓ CBIC filed a proof of secured claim. Prior to plan confirmation, Debtors did not object to the claim, either pursuant to the claims objection process, or by initiating an adversary proceeding to determine the extent and validity of CBIC's lien. Merely listing the claim as unsecured in their schedules was not enough to divest the CBIC claim of its status as a deemed valid claim and lien interest. 11 U.S.C. § 502(a).

Therefore, we hold that at the time of plan confirmation, CBIC's proof of claim was deemed to be an allowed secured claim, and was entitled to distribution from the estate.

### 2. *Section 506(a)—Valuation and the Secured Claim*

The Code contains a separate procedure to determine whether sufficient value exists in the collateral which secures a claim to support an *in rem* right. Although there was no pledged collateral in this case, nevertheless CBIC's claim could only be secured to the extent it attached to nonexempt equity in Debtors' residence.

▓▓ Section 506(a)[8] provides for the bifurcation of an allowed claim into its secured and unsecured components according to the value of the collateral. Only a claim that has first been allowed under § 502(a), and then is determined secured to the extent permitted by § 506(a), comes within the protective provisions of § 1325(a)(5) relating to the required treatment of allowed secured claims. 8 *Collier on Bankruptcy, supra,* § 1325.06[1][a], at 1325–24 to 1325–25. Unless a secured creditor accepts the plan (§ 1325(a)(5)(A)), its allowed secured claim must be provided for by the plan by (1) providing for retention of the lien by the lienholder while making payments equal to the present value of the collateral (§ 1325(a)(5)(B)(i) and (ii)); or (2) surrendering the collateral to the creditor (§ 1325(a)(5)(C)).

▓▓ Section 506 does not determine the allowance or disallowance of a claim, but rather governs the amount and treatment of secured claims. 4 *Collier on Bankruptcy, supra,* ¶ 506.01. This section "was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code." *Oregon v. Lange*

---

**7.** Rule 3007 provides that if an objection to a claim "is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Fed.R.Bankr.P. 3007. Rule 7001 states that a proceeding "to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Fed.R.Bankr.P. 7001(2).

**8.** Section § 506(a) provides:
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. § 506(a).

*(In re Lange)*, 120 B.R. 132, 135 (9th Cir. BAP 1990). In a reorganization case, § 506 is relevant regarding what claims get paid through the plan, "and the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor." *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R. 872, 876 (9th Cir. BAP 1998).

 Rule 3012 implements the substantive rights of § 506(a). 9 *Collier on Bankruptcy, supra*, ¶ 3012.01, at 3012–1. It provides that the bankruptcy court may determine the value of a secured claim, upon motion of a party in interest, and after a hearing on notice to the holder of the secured claim. Such a motion commences a contested matter pursuant to Rule 9014. However, if the valuation is part of an effort to determine the validity, priority or extent of a lien, then an adversary proceeding is required, pursuant to Rule 7001(2). *Id.* at 3012–4.

 Indisputably, Debtors did not move to determine whether their residence had sufficient value to secure CBIC's lien, nor did they commence an adversary proceeding, prior to plan confirmation, to determine the extent of CBIC's lien. On appeal, they contend that the plan provisions, together with their bankruptcy schedules, determined CBIC's secured claim to be unsecured and thereby stripped off its lien. *See* 11 U.S.C. § 506(d) (providing, with exceptions, that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void"). We disagree with Debtors' argument because CBIC's claim was "deemed allowed" and the plan did not "provide for" CBIC's secured claim and lien. *See Dewsnup*, 502 U.S. at 415, 112 S.Ct. 773 (holding that § 506(d) "voids only liens corresponding to claims that have *not* been allowed" under § 502) (emphasis in original).

### B. To be Adversely Affected, an Allowed Secured Claim Must be "Provided for" in the Chapter 13 Plan

Section 1327 provides that "[e]xcept as otherwise *provided in the plan* or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor" and "the property vesting in the debtor . . . is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(b) and (c) (emphasis supplied). Section 1328(a) mandates that a debtor shall be granted a discharge of "all debts *provided for by the plan* or disallowed under § 502 of this title." 11 U.S.C. § 1328(a) (emphasis added).

 The phrase "provided for in the plan," means that a plan " 'makes a provision' for, 'deals with,' or even 'refers to' a claim." *Rake v. Wade*, 508 U.S. 464, 474, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (citations omitted); *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1122 (9th Cir.1983). The treatment of an allowed secured claim is dictated by the Bankruptcy Code, which both protects lienholders' rights and empowers chapter 13 debtors to "provide for" and manage liens through the plan. *See* 11 U.S.C. §§ 1322,[9] 1325(a)(5).

Under § 1327(a), the provisions of a confirmed plan "bind the debtor and each creditor, whether or not the claim of such

---

9. Section 1322(b) provides that the plan can modify the rights of holders of secured claims (other than a claim secured only by a security interest in real property that is the debtor's principal residence). 11 U.S.C. § 1322(b)(2).

The anti-modification provision does not apply to a judicial lien, which is not considered to be a security interest. *See In re Williams*, 166 B.R. 615, 618 (Bankr.E.D.Va.1994).

creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327. Although a secured creditor is bound by the plan, this does not mean that a debtor can void or otherwise extinguish a creditor's lien without addressing the lien in the plan. *See Long,* 117 U.S. at 620–21, 6 S.Ct. 917; *Lee Serv'g Co. v. Wolf (In re Wolf),* 162 B.R. 98, 106 (Bankr.D.N.J.1993).

The extent to which chapter 13 plan provisions themselves can constitute an "objection to" or "valuation of" a secured claim, or alone can mandate avoidance of the lien, is unsettled. Bankruptcy courts have typically taken one of three approaches: (1) chapter 13 plan confirmation prevails over the claims process; (2) the claims process prevails over plan confirmation; or (3) a middle-of-the-road approach based on due process concerns. *See generally In re Basham,* 167 B.R. 903, 905–08 (Bankr.W.D.Mo.1994); Eric S. Richards, *Due Process Limitations on the Modification of Liens through Bankruptcy Reorganization,* 71 Am.Bankr.L.J. 43 (Winter 1997).

We have approved a line of cases which holds that the lien of a participating or nonparticipating creditor cannot be extinguished except through a formal claim objection or lien avoidance action, rather than through an uncontested plan confirmation hearing. *See Hobdy,* 130 B.R. at 320 (citing with approval *Simmons v. Savell (In re Simmons),* 765 F.2d 547, 551 (5th Cir.1985), and holding that designating a statutory lienholder's claim as an unsecured claim in the chapter 13 plan cannot be deemed an "objection" equal in force to Bankruptcy Rule 3007, which is "tantamount to the filing of a complaint in a civil action").

The "middle-of-the-road" approach, which has emerged in the case law subsequent to *Hobdy,* focuses on the sufficiency of the notice and considers the totality of the circumstances. Those courts hold that a debtor can bypass the claims allowance and adversary rules and, instead, "object" to a creditor's claim through plan provisions which modify such debt and lien. *See Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160, 162–63 (4th Cir.1993) (holding that due process and Rule 3012 required specific notice that a § 506 valuation hearing would be conducted at plan confirmation, before creditor's secured claim could be treated as partially secured) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *Basham,* 167 B.R. at 908; *In re Durham,* 260 B.R. 383, 387 (Bankr.D.S.C.2001). *See also In re Hoskins,* 262 B.R. 693, 697 (Bankr. E.D.Mich.2001); *In re Hudson,* 260 B.R. 421, 441–29, 443 (Bankr.W.D.Mich.2001) (harmonizing confirmation and claims allowance process and distinguishing notice problems).

■ We now acknowledge that a plan can effectively determine value and/or avoid a lien only if the creditor receives clear notice that the plan will do so. A plan that is silent about the fate of a secured claim provides no notice of what will happen to the secured claim and therefore cannot effectively avoid a lien or determine its value. *See Great Lakes Higher Ed. Corp. v. Pardee (In re Pardee),* 193 F.3d 1083, 1085–86 (9th Cir.1999); *Bisch v. United States (In re Bisch),* 159 B.R. 546, 549 (9th Cir. BAP 1993) (failure to provide for the secured debt and lien in the chapter 13 plan allowed the IRS's tax lien to survive the bankruptcy process). *See also Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 94 (4th Cir.1995) (holding that unless a plan "acknowledges the claim or [lien] interest and makes explicit provision for its treatment … (for instance, by expressly pro-

viding for payment of an allowed secured claim and cancellation of the lien), [then] that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding" to determine the validity, priority or extent of the lien), *cited with approval in Expeditors Int'l of Wash., Inc. v. Citicorp N. Am., Inc. (In re Colortran)*, 218 B.R. 507, 510 (9th Cir. BAP 1997).

■ Debtors' plan in this case did not "provide for" CBIC's secured claim by any of the required methods. Debtors listed the CBIC debt as unsecured in their bankruptcy schedules, but did not refer to it in the plan. The plan treated all unsecured claims similarly, by paying them nothing. Nothing in the plan alerted CBIC that Debtors intended simultaneously to avoid its lien and pay it nothing. Debtors nevertheless contend that CBIC either consented to its treatment as an unsecured claimant or was bound to such status by the confirmed plan, even though the plan nowhere acknowledged or treated CBIC's secured claim or lien. We hold that such "treatment" did not meet the due process

requirements for the discharge of a secured debt, pursuant to § 1328(a).

Due process is the linchpin to determining the rights of secured creditors in chapter 13,[10] and if a creditor receives clear notice, but chooses to ignore the bankruptcy proceedings, it does so at its peril. *Gregory*, 705 F.2d at 1122–23. "If a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order, 'it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code.'" *Pardee*, 193 F.3d at 1086 (citation omitted).

In *Gregory*, an undisputedly unsecured creditor complained that a confirmed plan which provided for zero payment to the unsecured class had not provided for its claim. The Ninth Circuit Court of Appeals rejected that argument, holding that a plan which proposes to pay nothing on a claim does indeed "provide for" the claim. *Gregory*, 705 F.2d at 1123.

However, there is a significant difference between a plan which provides for zero payment to unsecured creditors and

**10.** Judge Keith M. Lundin has explained the due process aspects of chapter 13 plan treatment of secured debt:

> The issue is not, which procedure trumps another? The issue is, did the creditor have sufficient notice of the plan and opportunity to object such that confirmation has the effects described in § 1327(a), (b) and (c)?
>
> Procedural due process can be satisfied in several ways without violating any fundamental principles of bankruptcy law. Describing in a Chapter 13 plan the treatment of a secured claim and determining the allowed amount of a secured claim for purposes of § 506(a) inevitably involve some of the same questions of fact and law. Valuation of collateral is often at the heart of both. There is no reason under the Bankruptcy Code or Rules why the overlapping issues can't be decided in either context— during a hearing on confirmation of the plan or as part of a hearing before or after

> confirmation on an objection to a claim. If notice is adequate, the value of a secured claim holder's collateral can be determined on a motion in advance of confirmation under Bankruptcy Rule 3012, at the confirmation hearing as part of the trial of a contested plan, or at a hearing on an objection to the creditor's claim. The outcome of each of these procedures is the same for purposes of the effects of confirmation in § 1327—if notice was adequate and the procedural due process rights of the secured claim holder are respected, a bankruptcy court order fixing the value of collateral, determining the allowed amount of a secured claim or defining what the secured claim holder will receive in satisfaction of its lien rights is binding on all parties without regard to the label on the process.

> 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 233.1, at 233–43 to 233–44 (3d ed. 2000).

one, like the subject plan, which does not in any way recharacterize a deemed allowed secured claim as unsecured. As distinguished from *Gregory*, here Debtors' plan failed to acknowledge CBIC's secured claim in any manner, and that was its fatal shortcoming. Moreover, there was no notice given in the plan that Debtors intended to contest CBIC's secured claim based on a valuation of their residence.

■ In our Circuit, a creditor with express notice of its proposed treatment in the plan is required to object to the plan, or it will be bound by it. *Pardee*, 193 F.3d at 1085–86 (creditor with notice of plan, which expressly purported to discharge the postpetition interest on its debt, who failed to object to the plan or to appeal the plan confirmation order, was bound by such order.) *See also Wolf*, 162 B.R. at 107–09 (plan which provided that the creditor's mortgage would be crammed down to zero and its lien canceled satisfied due process and was *res judicata* ); *Mason–McDuffie Mortgage Corp. v. Peters (In re Peters)*, 101 F.3d 618, 620 (9th Cir.1996) (citing *Wolf* and stating that "the gist of [§ 1327(c)] is that a creditor must be satisfied with the claims and interests that the plan explicitly gives it.").

We presaged this policy in *Hobdy*, when, although the case could have been decided solely on statutory grounds, we expressed due process concerns. *See Hobdy*, 130 B.R. at 320–21. There, the secured creditor filed a secured proof of claim, which was deemed allowed. The debtor did not formally object to the claim, but proposed, in his plan to reduce the creditor's claim by $32,000. The creditor alleged that it did not receive notice, or a copy of, the proposed plan. The creditor did not object to the plan or attend the confirmation hearing, and the plan was confirmed. More than a year later, the creditor moved for allowance of its claim, and the bankruptcy court denied the motion. *Id.* at 319.

On appeal, we reversed, and held that the creditor's claim, which was deemed allowed, had been compromised without requisite notice and due process. We held that the debtor could not alter the amount of the claim, nor trump the creditor's right to defend its claim, without first bringing a contested claim allowance procedure. *Id.* at 321.

■ When a plan is ambiguous, the Ninth Circuit's approach puts the risk of challenging the claim upon the debtor-drafter. *Id. See also Deutchman v. Internal Revenue (In re Deutchman)*, 192 F.3d 457, 461 (4th Cir.1999) (a chapter 13 plan does not "provide for" a lien "simply by failing or refusing to acknowledge it or by calling the creditor unsecured"). Thus, it was not incumbent upon CBIC to object to the chapter 13 plan when the plan did not address, nor in any way attempt to value, its secured claim. *See Pardee*, 193 F.3d at 1085.

Debtors cite *In re Harnish*, 224 B.R. 91 (Bankr.N.D.Iowa 1998), to support their arguments. There, Sears filed a proof of secured claim, but the debtors had scheduled the claim as unsecured. Their chapter 13 plan was silent concerning the Sears secured claim and lien, but provided for a distribution to unsecured creditors. The bankruptcy court held that the plan "provided for" Sears' secured claim because the same debt was scheduled by the debtors as an unsecured claim, and the unsecured claims were paid through the plan. *Id.* at 94. Furthermore, the court held that because the Sears' lien was not mentioned in the plan, it was extinguished. That case is inconsistent with Ninth Cir-

cuit precedent, and is not controlling here.[11]

Simply by assuming that the CBIC claim would be classified with the other unsecured claims, Debtors in the case at bar did not "provide for" CBIC's allowed secured claim and lien, and thus, the plan could not bind CBIC to an unsecured status. Therefore, CBIC could rightly rely on the conclusion that its unchallenged lien would pass through the bankruptcy unaffected, consistent with well-established law. *See In re Beard,* 112 B.R. 951, 954 (Bankr.N.D.Ind.1990) ("Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.") (citing *Simmons,* 765 F.2d at 554–59). Merely listing the claim as unsecured in their schedules was not enough to divest the claim of its status as a deemed allowed secured claim, pursuant to § 502(a), nor bar it from entitlement to distribution in the allowed amount. *See Hobdy,* 130 B.R. at 322 (concurring opinion, stating that the chapter 13 plan was binding as to an amount specified for distribution, but not as to the claim amount, which was controlled by the proof of claim).

## C. Debtors' Claim Objection was Barred by Laches

■■■ CBIC's deemed allowed secured claim had been paid in full. Four and one-half years after plan confirmation and payment, Debtors sought to have the court disallow the CBIC secured claim. Applying laches, the bankruptcy court denied Debtors' motion, finding that the objection came too late. We agree.

### 1. No Limitations Period for Claim Objections

Debtors contend that neither the Bankruptcy Code nor Rules specify a limitations period for objecting to the allowance of proofs of claim, and that laches did not apply because CBIC was not prejudiced by the delay.[12] *See* 11 U.S.C. § 502; Fed. R.Bankr.P. 3007. CBIC counters that Debtors were required to object *before* plan confirmation, based on the claim preclusion aspects of the plan confirmation order. *See Pardee,* 193 F.3d at 1087 (holding that a confirmation order binds both creditor and debtor as to any matter which was or could have been raised as part of the confirmation process); 11 U.S.C. § 1327(a).

As we explained above, the order confirming the chapter 13 plan did not conclu-

---

**11.** *Harnish* followed the line of cases which holds that the plan confirmation process is paramount to the claims objection process. These cases put the burden of objecting to an ambiguous plan upon the creditor. *See In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990) (secured creditor has duty to monitor proceeding for any alteration of its rights). *See also In re Penrod,* 50 F.3d 459, 463 (7th Cir. 1995) (holding that if the plan makes no mention of a lien but provides for the claim, the lien is extinguished). *See also* Mark D. Collins, *Do Pre-existing Liens Really Pass Through Bankruptcy Unaffected?,* 18 Am.Bankr.Inst.J. 9 (Nov.1999) (stating that the majority of courts follow the reasoning of *Penrod* ).

**12.** Debtors have raised a new issue on appeal, that CBIC was unjustly enriched by the payment. We do not consider this argument, which was not presented to, nor addressed by the bankruptcy court. *See Berg v. Barth (In re Berg),* 186 B.R. 479, 482 (9th Cir. BAP 1995). In addition, Debtors have waived any claim that CBIC is now holding the payment unjustly. "A waiver is an intentional relinquishment or abandonment of a known right or privilege." *United States v. Amwest Surety Ins. Co.,* 54 F.3d 601, 602 (9th Cir.1995) (quoting *Groves v. Prickett,* 420 F.2d 1119, 1125 (9th Cir.1970)). CBIC's deemed allowed secured claim was duly paid by the trustee after notice to, and without objection from, Debtors.

sively determine CBIC's allowed secured claim under § 502. Moreover, the provisions of Debtors' plan were ineffective to reclassify CBIC's claim and did not constitute a formal claim objection. Therefore, CBIC's claim was deemed allowed and it passed through the confirmation process unchallenged. Then, four and one-half years later, before the case was closed, Debtors attempted to remove the claim from the deemed-allowed category by belatedly challenging it. Prior to that point in time, there had not been an order either conclusively allowing or disallowing the claim.[13]

To date, there has been no case law in the Ninth Circuit prohibiting postconfirmation claim objections. Rule 3007 does not provide a time limit for objections to proofs of claims, and such an objection may be filed at any time. *Bitters v. Networks Elec. Corp. (In re Networks Elec.*

*Corp.),* 195 B.R. 92, 101 (9th Cir. BAP 1996).

Other circuits have viewed postconfirmation claim objections as prohibited collateral attacks upon the final plan confirmation order. The Fifth Circuit in *Simmons* held that §§ 506(a) and 1325(a)(5) require that a proof of secured claim must be acted upon—either allowed or disallowed—or be deemed an allowed secured claim under § 502(a) for purposes of the plan, *before* plan confirmation, and that an objection is thereafter barred by § 1327(a). *See Simmons,* 765 F.2d at 553. *Accord Adair v. Sherman,* 230 F.3d 890, 894–95 (7th Cir.2000) ("[W]hen a proof of claim is filed prior to confirmation, and the debtor does not object prior to confirmation, the debtor may not file a post-confirmation collateral action that calls into question the proof of claim.") (footnotes omitted);[14] *Wallis v. Justice Oaks II, Ltd. (In re*

**13.** Although the parties briefed the issue of whether Debtors showed "cause" for reconsideration of an allowed claim, pursuant to § 502(j) and Rule 3008, we need not reach this issue, first because Debtors did not move under that section, and second, because there was no final order allowing the claim to trigger reconsideration under § 502(j).

We are cognizant of Ninth Circuit law which holds that a claim that is deemed allowed, and to which no objection has been filed, is final for claim preclusion purposes once the chapter 7 bankruptcy case has been closed. *Siegel v. Fed. Home Loan Mortgage Corp.,* 143 F.3d 525, 529–30 (9th Cir.1998); *see also Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.),* 278 F.3d 890, 894 (9th Cir.2002) (holding that the court's disallowance of a claim was a final judgment).

*Siegel* and *Los Gatos Lodge* do not govern the conclusiveness of a chapter 13 plan confirmation order in relation to a deemed allowed secured claim, particularly where, as here, the plan did not provide for the claim and the challenge came years after payment.

**14.** The bankruptcy court for the Northern District of Illinois harmonized the holding of *Adair* with Rule 3007, which does not contain

a time limit for claim objections. In *In re Fareed,* 262 B.R. 761 (Bankr.N.D.Ill.2001), the court distinguished a claim objection under § 502 and a "claim objection" that is a disguised valuation motion under § 506. *Id.* at 770–71. The court concluded that *Adair* concerned only a collateral valuation, and held that where a proof of claim also contains a valuation of the collateral (referring to Official Bankruptcy Form 10), the value of the secured claim for purposes of § 506(a) will be conclusively determined by the confirmed plan, if no challenge has been made. *Id.*

Similarly, in *Fareed,* the debtor objected to the creditor's claim postconfirmation, asserting a lower collateral value. *Id.* at 762. The debtor's plan provided for payment of "the value of [the] security" but did not specify the value. *Id.* at 770. Nor had the debtor challenged the creditor's claim or valuation. The court held that the plan was ambiguous and would be construed against the debtor in favor of the creditor's proof of claim. *Id.* at 770. Thus, it denied the debtor's postconfirmation "claim objection." *Id.* at 771.

*Justice Oaks II, Ltd.),* 898 F.2d 1544, 1553 & n. 11 (11th Cir.1990) (holding that a claim objection, concerning classification in the plan, is barred by *res judicata* if brought post-confirmation, and harmonizing chapters 11 and 13 in this regard); *In re Bernard,* 189 B.R. 1017, 1021 (Bankr.N.D.Ga.1996) (confirmation order was "implicit determination of claim validity governed by the principles of *res judicata,*" or claim preclusion).

We are not inclined to make such a blanket ruling. Where the amount stated in the proof of claim differs from the amount proposed for payment under the plan, we have opined that "[s]ections 502(a) and 1327(a) may be harmonized by interpreting § 1327(a) as dictating that the plan binds the parties to the amount the trustee will distribute under the plan, but is not binding as to the amount of the claim." *Hobdy,* 130 B.R. at 322 (no collateral involved, and issue was the amount of a claim for prepetition arrearages) (J. Perris, concurring op.).[15]

In their objection, Debtors argued that there was no nonexempt equity in their residence to secure CBIC's claim and lien. While such an objection questioned whether CBIC's claim was thus enforceable, a grounds for objection enumerated in § 502(b)(1), Debtors' objection also raised a valuation issue concerning the amount of nonexempt equity in the residence. Although a claim may be allowed as a valid secured claim, whether it is *fully* secured is a valuation question, which may not have been determined by either the plan provisions or the confirmation order.

Such are the circumstances of our case. CBIC did not value Debtor's residence in its proof of claim, nor did the plan purport to value it.

The timeliness of a valuation determination under Rule 3012 depends "on the purpose for which it is sought." *See* 9 *Collier on Bankruptcy, supra,* ¶ 3012.01, at 3012–2. In this case, the valuation motion should have been brought before CBIC was paid the full amount of its secured claim, and Debtors' untimely motion was subject to denial based on the equities of the case and the consideration of the totality of the circumstances.

### 2. *Equitable Time Limits for Objection*

█ Generally, when an action is not subject to a statute of limitations, the equitable doctrine of laches may alternatively limit the time within which the action must be brought. *Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940). *See also County Fuel Co. v. Equitable Bank Corp.,* 832 F.2d 290, 294 n. 2 (4th Cir.1987) (the plaintiff waived state law claim, but laches was alternative basis for affirmance); *Flournoy v. Cent. Fin. Co., Inc. of Columbus (In re Henderson),* 577 F.2d 997, 1001 (5th Cir.1978) (defendant could assert equitable claim of laches against claim objection, under Bankruptcy Act); *Heritage Hotel Ltd. P'ship I v. Valley Bank of Nev. (In re Heritage Hotel Ltd. P'ship I),* 160 B.R. 374, 378–79 (9th Cir. BAP 1993), *aff'd mem.,* 59 F.3d 175, 1995 WL 369528 (9th Cir.1995) (equitable estoppel barred lender liability action based on

---

**15.** Another reason for flexibility in allowing claim objections postconfirmation is that the bankruptcy court for the District of Nevada apparently allows the filing of proofs of claim after plan confirmation, as evidenced by the claims bar date in this case. Therefore, the claims allowance process may not be complete at the time of plan confirmation. This may be a distinguishing factor among the various decisions. *See Marlow v. Sweet Antiques (In re Marlow),* 216 B.R. 975 (Bankr. N.D.Ala.1998), *Bernard,* 189 B.R. 1017, and *Hudson,* 260 B.R. 421 (reviews of finality when claims allowance continues beyond confirmation).

lender's claim following chapter 11 plan confirmation); *In re Barton*, 249 B.R. 561, 566 (Bankr.E.D.Wash.2000) (claim objection may be subject to laches or equitable estoppel defenses); *In re Mahan*, 104 B.R. 300, 301 (Bankr.E.D.Cal.1989) (debtors were estopped from objecting to claims).

■ To succeed on its affirmative defense of laches, CBIC was required to present evidence of an inexcusable delay in the exercise of a known right, and that it was thereby prejudiced. *See Stevens Tech. Servs., Inc. v. S.S. Brooklyn*, 885 F.2d 584, 588 (9th Cir.1989). Our Circuit has observed that "[t]he bare fact of delay creates a rebuttable presumption of prejudice." *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975).

In this case, the evidence of Debtors' delay in bringing the objection must be viewed in the context of the progression of the chapter 13 case. Debtors' five-year plan had been confirmed and nearly completed. Administratively, the claims against the estate had been determined years before for purposes of distribution— at the latest, at the time of the trustee's notice. The trustee's notice clearly stated that CBIC would be paid 100% of its secured claim, and gave a time period for filing written objections to the proposed allowance and payment. Debtors did nothing.

Granted, the trustee's notice of payment was not a *motion*, and no court order allowing the claims as noticed was issued. *Compare In re Macias*, 195 B.R. 659, 661 (Bankr.W.D.Tex.1996) (trustee obtained court authorization to make distributions in accordance with her recommendations) and *Marlow*, 216 B.R. at 977 (order entered on trustee's motion to allow claims). Nevertheless, such notice was apparently consistent with Nevada's local custom and practice. In addition, it informed Debtors that certain creditors had filed proofs of claim and in what amounts, and provided Debtors with an opportunity to file objections to those claims before payment. This procedure, on the part of the trustee, brought prompt closure to the issue of whether it was proper to distribute estate funds to CBIC. *See In re Lee*, 189 B.R. 692, 694 n. 2 (Bankr.M.D.Tenn.1995); *see also* 4 Lundin, *supra*, § 287.1 at 287.1– 287.2 and n. 2 (filing of a motion to allow claims could be seen as satisfaction of the trustee's duties prescribed in §§ 1302(b)(1) and 704(5)).

Although they received the notice, Debtors failed to object, and CBIC's claim was paid in full. Four and one-half years later, Debtors finally objected to the allowance of CBIC's secured claim, with the weak explanation that counsel had "overlooked" this clearly important matter.[16]

Debtors contend that they did not discover the payment to CBIC until they attempted to sell their residence. We

**16.** Debtors raise two additional challenges, concerning the trustee, which can be readily disposed of. First, Debtors contend that the trustee improperly modified the plan by treating CBIC as a secured creditor. However, the trustee's payment notice did not fall within the provisions of § 1329(a) as a motion to modify the plan. Instead, the trustee simply gave Debtors clear notice of his intent to pay CBIC's allowed and unchallenged secured claim. Because Debtors did not object, CBIC's claim was thereafter treated under the general provisions for allowed secured claims.

Debtors also maintain that they have a right to object because the trustee paid CBIC's claim before the priority tax claims. Even if the trustee erred in this regard, which the bankruptcy court did not find and we do not suggest, Debtors, by their silence and failure to timely respond to the Notice of Trustee's Intent to Pay Claims, are estopped from asserting that the trustee's payment of CBIC's deemed allowed secured claim was improper.

agree with the bankruptcy court that Debtors' allegation did not constitute a reasonable excuse for their voluntary failure to object to CBIC's secured claim earlier in the case, if they truly believed it was unsecured. The circumstances of providing due process and bringing clarity to ambiguous plan provisions were entirely within Debtors' control. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (construing "excusable neglect" standard for late filings under Fed.R.Bankr.P. 9006).

Debtors contend that CBIC was not prejudiced by the four-year delay because CBIC's Satisfaction of Judgment had not yet been recorded, and as a bonding company, CBIC could easily return the money. We disagree.

As we have said, prejudice is presumed from delay. Further, CBIC presented evidence that it had changed its legal position by virtue of the release of its lien, notwithstanding that the written document had not yet been recorded. The fact that CBIC could have returned the money does not mean that it would not be prejudiced if it were ordered to disgorge the payment. The evidence showed that CBIC released its lien in reliance upon its deemed allowed secured claim, the terms of the confirmed plan, and the payment of its claim by the trustee years before. Indeed, full payment of the secured claim extinguished CBIC's lien. Debtors' argument is insufficient, therefore, to rebut the presumption of prejudicial delay.[17]

An undue delay in acting may place "an unwarranted burden on the court" as well as on the parties. *See Adams v. Gould*

*Inc.,* 739 F.2d 858, 867–68 (3rd Cir.1984) (discussing prejudicial delay in the context of amendment of pleadings). Here, the integrity of the chapter 13 process itself was brought into issue by Debtors' objection. The equities weigh heavily against Debtors.

In summary, Debtors' argument that CBIC was not prejudiced unfairly narrows the scope of the many changes that have taken place, all due to Debtors' own actions, or more accurately, their inactions. Debtors simply waited too long to object to CBIC's secured claim. The bankruptcy court properly determined that the reorganization process should not be undermined because of Debtors' voluntary inactivity and long-dormant inattention to detail. Therefore, the bankruptcy court did not abuse its discretion by denying relief to Debtors, and applying the equitable doctrine of laches.

### CONCLUSION

Debtors had ample opportunities to timely object, but they failed to do so. CBIC filed a timely proof of claim that was deemed allowed. Debtors' chapter 13 plan neither provided for the CBIC secured claim, nor gave CBIC sufficient notice of Debtors' intent to treat its unchallenged claim as unsecured.

When, shortly after confirmation, the trustee gave clear notice that he proposed to pay the CBIC allowed secured claim in full unless Debtors objected within 30 days, Debtors did nothing. Once the trustee had paid the CBIC claim in full and CBIC had released its lien, Debtors' objection was barred by laches.

---

**17.** Debtors are also estopped from seeking disgorgement from CBIC by their voluntary request for CBIC's release of its lien based upon the payment of its claim by the trustee. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858, at 282 (2d ed.1995) (voluntary action may estop a party from seeking relief on the ground of mistake or excusable neglect).

The bankruptcy court's February 6, 2001 order is **AFFIRMED**.

PERRIS, Bankruptcy Judge, concurring.

I agree that the confirmed chapter 13 plan in this case did not extinguish CBIC's lien and that the bankruptcy court did not abuse its discretion in applying laches to bar debtors' objection to CBIC's claim. Confirmation of a plan that does not mention a secured creditor's claim in any way cannot affect that creditor's lien under either the approach approved in *Fireman's Fund Mortg. Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318 (9th Cir. BAP 1991), which requires either a formal claim objection or lien avoidance action, or the "middle-of-the-road" approach the majority adopts today, which focuses on the sufficiency of notice and the totality of the circumstances to determine whether a debtor can in effect "object" to a creditor's claim through plan provisions that modify the debt and lien.

Under either approach, the fact that debtors' plan did not mention CBIC's claim precludes confirmation of that plan from extinguishing CBIC's lien. Because the approach taken does not alter the outcome, in my opinion this case is not the appropriate vehicle for deciding whether to depart from our prior holding in *Hobdy* and adopt a new test. Accordingly, I concur in the outcome, but do not join in part B. of the Discussion section of the opinion, which adopts the sufficiency of notice/totality of circumstances approach.