In re Francisca RASCON, Debtor–Appellee.

No. C 03–03582 JSW.

United States District Court, N.D. California.

Feb. 18, 2005.

Cheryl C. Rouse, Norman P. Bahlert, Law Offices of Rouse & Bahlert, San Francisco, CA, for Appellant.

Nathan Paco, Law Offices of Nathan Paco, Burlingame, CA, for Appellee.

### ORDER AFFIRMING BANKRUPTCY COURT'S ORDER GRANTING DEBTOR'S MOTION TO AVOID LIEN

WHITE, District Judge.

Now before the Court is Appellant–Creditor Khalil Salah's appeal from the

final Amended Order on Debtor's Motion for An Order Avoiding Lien and Vacating Prior Order ("the 2003 Order") of the United States Bankruptcy Court for the Northern District of California ("the Bankruptcy Court"). Appellant–Creditor asks that this Court reverse the Bankruptcy Court's 2003 Order granting the Debtor–Appellee Francisca Rascon's Motion to Avoid Lien. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, the Court hereby AFFIRMS the Bankruptcy Court's 2003 Order.

## BACKGROUND

Debtor–Appellee, Francisca Rascon ("Debtor") purchased a five unit residential property located at 1129 Willow Road, Menlo Park, California from Appellant–Creditor, Khalil Salah ("Salah"), on December 31, 1991 for $430,000. Debtor paid the purchase price with three promissory notes executed on December 16, 1991. Deeds of trust against the purchased property secured two of the notes: the first in the amount of $250,000 and the second in the amount of $100,000. (Salah Opening Br. at 4.)

Debtor filed her bankruptcy petition and proposed Chapter 13 Plan ("Original Plan") on August 9, 1996, a copy of which was served on Salah. (Transcript ("TR") at 5; Salah Opening Br. at 5.) The Original Plan valued the collateral property securing Salah's claims at $250,000. The Original Plan also listed Salah as a secured creditor in the amount of $250,000. Boiler plate language in the Original Plan states in relevant part:

> The valuations shown above shall be binding unless a timely objection to confirmation is filed. Secured claims shall be allowed *for the value of the collateral* or the amount of a claim, whichever is less .... Secured creditors shall retain

their liens until their allowed secured claims have been paid. The remainder of the amount owing, if any, shall be allowed as a general unsecured claim paid under the provisions of paragraph 2(d). (Original Chapter 13 Plan (7/25/96) (emphasis added).)

Paragraph 2(d) of the Original Plan states that unsecured claims shall be paid zero cents on the dollar. Schedule D, attached to the original plan, lists Salah as a secured creditor in the amount of $250,000, the value of the collateral. Schedule F, also attached to the original plan, lists Salah as an unsecured creditor for the remaining amount owed on the 1129 Willow Road property. Salah did not file an objection the Debtor's Original Plan.

Debtor subsequently filed an attachment ("the Attachment") at the request of the Trustee to clarify the treatment of Salah's claims. The Attachment again listed Salah as a secured creditor in the amount of $250,000 and an unsecured creditor in the amount of $100,000. Salah did not receive a copy of the Attachment. After completion of the Chapter 13 proceedings, the Bankruptcy Court entered an order ("1997 Confirmation Order") confirming Debtor's First Amended Plan ("Confirmed Plan") on December 31, 1997.

In a letter dated July 11, 2001, Salah acknowledges that he understood Debtor's intent to avoid the $100,000 lien on the property as a result of the bankruptcy proceedings. Salah stated his disagreement with Debtor's position and demanded full payment of the $100,000 deed of trust. (Rascon Decl. in Support of Debtor's Motion for Order Avoiding Lien, Exh. A.) In response, Debtor filed an application for an order reopening the case and a motion for an order avoiding lien on December 13, 2002. In a hearing held on April 11, 2003, the Bankruptcy Court determined that the Confirmed Plan "provided for" Salah, and

in accordance with 11 U.S.C. § 506[1], recognized the $250,000 lien as an allowed secured claim and the $100,000 lien as an unsecured claim. (TR at 11.) Debtor's motion to avoid lien was therefore unnecessary because the $100,000 lien was void pursuant to the Confirmed Plan. Consequently, the Bankruptcy Court treated Debtor's motion as a motion to enforce the plan. (TR at 11.) The Bankruptcy Court granted Debtor's motion and issued the 2003 Order. Salah now seeks to have this Court reverse the Bankruptcy Court's 2003 Order.

### Parties' Arguments on Appeal

Section 1327(c) of the Bankruptcy Code provides that upon confirmation of the debtor's bankruptcy plan, the property vesting in the debtor shall be free of any claim or interest of any "creditor provided for by the plan." Salah asserts that the $100,000 deed of trust survived Debtor's Chapter 13 proceedings intact because the Original Plan lacked specificity as to the treatment of the $100,000 claim. Therefore, according to Salah, he cannot be regarded as a "creditor provided for" by the Original Plan. Salah further argues that the Bankruptcy Court's determination to the contrary violated his Fifth Amendment Due Process Rights because the Original Plan did not provide adequate notice of Debtor's intent to avoid the $100,000 lien through the plan confirmation process. Salah also argues that Debtor's failure to provide him a copy of the First Amended Plan with the Attachment violated his Due Process rights. This latter argument is essentially another way of stating that the Original Plan, without inclusion of the At-

tachment, did not "provide for" Salah's claims, and therefore will not be treated as a separate issue by this Court.[2]

In response, Debtor argues Salah qualifies as a "creditor provided for by the plan" because the Original Plan, even without inclusion of the Attachment, identifies Salah by name and sets forth the total amount he was to receive. Debtor claims that confirmation of the Original Plan essentially reclassified Salah's $100,000 lien as an unsecured claim subject to the lien stripping provision of § 506(d).

Debtor further argues that the 2003 Order had no effect on Salah's $100,000 lien because the 1997 Confirmation Order, not the 2003 Order, voided that lien. Debtor contends that the 2003 Order only served to reiterate and clarify the effects of the 1997 Confirmation Order. Debtor argues that Salah failed to file a timely challenge to the 1997 Confirmation Order and is now prohibited from doing so. Debtor asserts that Salah is attempting to avoid the consequences of the 1997 Confirmation Order by seeking reversal of the 2003 Order.

### STANDARD OF REVIEW

■■■■ This court reviews issues of law under the *de novo* standard and findings of fact for clear error. *In re Shook,* 278 B.R. 815, 820 (9th Cir. BAP 2002). Interpretation of the Bankruptcy Code presents legal questions, which are reviewed *de novo. Id.*

### DISCUSSION

■■■■ As a general rule, unchallenged liens pass through bankruptcy unaffected. *In re Shook,* 278 B.R. at 821. However, a

---

1. Hereinafter, all references to code sections are references to 11 U.S.C. § 506, *et seq,* unless otherwise specifically stated.

2. Salah's Statement of Issues on Appeal, filed on August 4, 2003, included two additional issues that were not addressed in the parties'

briefs. Therefore, this Court deems those issues waived. *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1434 (9th Cir.1993) (noting issues not addressed in parties' opening briefs are deemed waived).

creditor's lien may be avoided through the Chapter 13 plan confirmation process where the basis for avoidance is lack of collateral value. *Id.* at 824; 11 U.S.C. § 506. The lien stripping effect of section 506 is consistent with section 1322(b)(2), which states that "the plan may modify the rights of holders of secured claims[.]" Confirmation of a plan can void an unsecured lien if the creditor is "provided for by the plan." 11 U.S.C. § 1327(c). What is required to adequately "provide for" the creditor is a function of due process. *In re Shook*, 278 B.R. at 825. Therefore, to satisfy due process requirements, and thus "provide for" the creditor, a plan must provide notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

## I. Salah's Due Process Rights Were Not Violated Because He Was Adequately "Provided For" by Debtor's Original Plan.

 As a preliminary matter, Salah's Due Process claims go to the effects of the 1997 Confirmation Order, not the 2003 Order. However, Salah failed to file timely objections to the Original Plan or the 1997 Confirmation Order, and is precluded from doing so on appeal. *In re Shook*, 278 B.R. at 826. Therefore, Salah cannot avoid the consequences of the 1997 Confirmation Order by appealing the 2003 Order. Even assuming Salah could overcome this bar, as will be set forth in the remainder of this section, the Original Plan adequately "provided for" Salah, thus satisfying Due Process requirements.

 The phrase "provide for" is commonly understood to mean that the plan "makes a provision for, deals with, or even refers to a claim." *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). To adequately "provide for" a creditor in a Chapter 13 plan, the plan must, at a minimum, identify the creditor by name and clearly and accurately characterize their claim. *In re Zimmerman*, 276 B.R. 598, 603 (Bankr.C.D.Ill.2001). A plan that seeks to eliminate a lien for lack of collateral value should "reveal" that intent, at least by implication. *In re Harlan*, 783 F.2d 839 (9th Cir.1986).

In *Shook*, a debtor sought to bind Contractors Bonding and Insurance Co. ("CBIC") to an unsecured creditor status through confirmation of its Chapter 13 plan. 278 B.R. at 820. CBIC was listed as an unsecured creditor in the Chapter 13 schedules, but was not acknowledged or otherwise mentioned in the plan provisions, either as a secured or unsecured creditor. *Id.* at 818. CBIC failed to object to the plan provisions prior to confirmation. *Id.* at 820. The Ninth Circuit held that merely listing CBIC's claim as unsecured in the schedules and providing in the plan that unsecured creditors be paid nothing was not sufficient to "provide for" CBIC and thus divest it of its lien interest, notwithstanding its failure to object to the plan. *Id.* at 825.

 In contrast, here Debtor's Original Plan identifies Salah by name twice and accurately characterizes his secured claim. The Original Plan first lists Salah as a secured creditor in the amount of $250,000, the value of his first lien against Debtor's property and, coincidentally, the total value of the property collaterizing Salah's claims. Salah is then referenced a second time as a secured creditor to be paid directly by Debtor at 10% interest until the $250,000 balance is paid in full. Unlike in *Shook*, here Debtor is not attempting to avoid a lien by

simply failing or refusing to acknowledge it. Salah was put on notice that the total value of the collateral securing his liens was $250,000. Thus, his $250,000 lien remained an allowed secured claim. As a result of the property's valuation however, the $100,000 lien was left unsecured, and therefore, according to section 2(d) of the Original Plan, was to be paid zero cents on the dollar. Although the Original Plan did not expressly list the $100,000 lien as an unsecured claim on which Salah would be paid nothing, this was the necessary implication to be drawn from the other provisions of the plan. While inclusion of the subsequent Amendment may have further clarified the treatment of Salah's second lien as unsecured, it was not necessary to satisfy constitutional notice requirements. As the Ninth Circuit stated in *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir.1999), "it is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result." Because the Original Plan, even without reference to the subsequent Amendment, identifies Salah as a creditor and "provides for" both the secured and unsecured liens, the Original Plan provided sufficient notice in accordance with due process requirements.

Salah's reliance on *Zimmerman* as an analogous case ignores several important factual distinctions. First, the plan in *Zimmerman* failed to refer to the creditor by name and did not address any of the creditor's security interests. 276 B.R. at 604. The plan also failed to accurately characterize the creditor's claim in the plan—treating a secured claim as unsecured without explanation. *Id.* Finally, the basis for avoiding creditor's claim was not lack of collateral value, as it is in this case. *Id.* The court held that because the

plan failed to address the creditor's claim or give any explanation for avoiding the lien, the creditor was not "provided for" by the plan and the lien passed through the bankruptcy unaffected. *Id.* at 605.

In contrast, here Debtor's Original Plan identified Salah by name on more than one occasion and accurately characterized his claims. The Original Plan values the collateral property at $250,000, the exact amount of Salah's first lien. Standard language from the Original Plan then explains that any amount owed in excess of the value of the collateral shall be deemed an unsecured claim and paid nothing. Because the property was fully encumbered by Salah's first lien, the second lien became an unsecured claim subject to avoidance under section 506(a). By explicitly listing both the value of the collateral and Salah's secured claim in that amount, the Original Plan adequately "provided for" Salah and satisfied due process notice requirements. Salah failed to file timely objections to the provisions of the Original Plan, and is now precluded from doing so on appeal. *Id.* at 602.

## II. Debtor's Plan Does Not Impermissibly Modify Salah's Claim And Provide For Repayment of the Secured Portion Beyond the Life of the Plan.

A Chapter 13 debtor may not invoke both section 506(a) to bifurcate, and thereby reduce, the amount of a creditor's secured claim and section 1322(b)(5) to extend repayment of the secured portion of the claim beyond a period of five years. *In re Enewally*, 368 F.3d 1165, 1171 (9th Cir.2004).

In *Enewally*, Washington Mutual Bank held a single deed of trust against the debtor's non-residential property in the amount of $245,023. *Id.* at 1167. The

debtor's Chapter 13 plan valued the collateral property at $210,000. *Id.* Thus, pursuant to section 506(a) and 1322(b)(2), the Bank's claim was bifurcated and deemed unsecured in the amount of $35,023. *Id.* The confirmed plan provided for monthly payments on the secured portion of the Bank's claim beyond the five year life of the plan. *Id.* The Ninth Circuit held that a "debtor may not invoke both a modification of a secured creditor's claim under section 1322(b)(2) and the right to 'cure and maintain' over the life of the original loan as authorized under section 1322(b)(5)." *Id.* at 1171.

Debtor's Confirmed Plan does not invoke both section 1322(b)(2) and section 1322(b)(5) in violation of this rule. Unlike the plan in *Enewally*, Debtor's Confirmed Plan did not bifurcate a single secured claim into two separate claims, one secured and one unsecured. Salah originally held two separate liens against Debtor's non-residential property, one in the amount of $250,000, and the other in the amount of $100,000. The Confirmed Plan values the collateral property at $250,000. Debtor's Confirmed Plan therefore treated the first of Salah's two claims as a fully allowed secured claim for $250,000, coincidentally the total value of the collateral property.[3] As a result, the remaining $100,000 claim was not modified pursuant to section 1322(b)(2), but was instead deemed unsecured in its entirety pursuant to section 506(a). Because the Confirmed Plan did not bifurcate either of Salah's claims and then extend payment of the secured por-

tion beyond the life of the plan, Debtor's Confirmed Plan is not in violation of the rule set forth by the Ninth Circuit in *Enewally*.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Bankruptcy Court granting Debtor's Motion to Avoid Lien.

**IT IS SO ORDERED.**

---

**3.** At the hearings on Debtor's motion to avoid lien there was a discussion regarding the actual amount owed on Salah's $250,000 claim. (TR at 8–10.) Salah argued that the balance due on the $250,000 claim at the time Debtor filed for bankruptcy was actually $236,000, leaving approximately $14,000 to secure part of Salah's $100,000 claim. (TR at 9.) However, Salah failed to challenge any of the valuations contained in the Confirmed Plan and is

now barred from challenging those amounts on appeal. *In re Enewally*, 368 F.3d at 1172 ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect."); 11 U.S.C. § 1327(a). Thus, the $250,000 valuation of Salah's first claim contained in the Confirmed Plan is binding on all parties, leaving the $100,000 claim entirely unsecured.